1  DAVID M. WALSH (CA SBN 120761)
   DWalsh@mofo.com
2  KAI S. BARTOLOMEO (CA SBN 264033)
   KBartolomeo@mofo.com
3  MORRISON & FOERSTER LLP
   707 Wilshire Boulevard
4  Los Angeles, California 90017-3543
   Telephone: 213.892.5200
5  Facsimile: 213.892.5454

6  TIFFANY CHEUNG (CA SBN 211497)
   TCheung@mofo.com
7  MORRISON & FOERSTER LLP
   425 Market Street
8  San Francisco, California 94105-2482
   Telephone: 415.268.7000
9  Facsimile: 415.268.7522

10 Attorneys for Defendant
   APPLE INC.
11

12                 UNITED STATES DISTRICT COURT

13                NORTHERN DISTRICT OF CALIFORNIA

14                      SAN JOSE DIVISION

15

16 ADAM BACKHAUT, BOUAKHAY JOY            Case No.   5:14-cv-02285 LHK
   BACKHAUT, and KENNETH MORRIS, on
17 behalf of themselves and all others similarly   **CLASS ACTION**
   situated,
18                                         **DEFENDANT APPLE INC.'S**
                   Plaintiffs,            **NOTICE OF MOTION AND**
19                                         **MOTION TO DISMISS;**
            v.                            **MEMORANDUM OF POINTS AND**
20                                         **AUTHORITIES IN SUPPORT**
   APPLE INC.,                            **THEREOF**
21
                   Defendant.
22                                         Date:    December 11, 2014
                                           Time:    1:30 p.m.
23                                         Place:   Courtroom 8 – 4th Floor
                                           Judge:   Hon. Lucy H. Koh
24
                                           Complaint Filed: May 16, 2014
25                                         Trial Date: None Set

26

27

28

# NOTICE OF MOTION AND MOTION TO DISMISS

TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on December 11, 2014, at 1:30 p.m., or as soon thereafter as the matter may be heard, in the Courtroom of the Honorable Lucy H. Koh, located at the Robert F. Peckman Federal Building, 280 South First Street, Fifth Floor, San Jose, California, Defendant Apple Inc. ("Apple") will, and hereby does, move the Court for an order dismissing Plaintiffs' Class Action Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

This motion is based on the Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the concurrently filed Request for Judicial Notice and supporting declarations, the papers and records on file in this action, and such other written and oral argument as may be presented to the Court.

Dated: August 18, 2014

> DAVID M. WALSH
> TIFFANY CHEUNG
> KAI S. BARTOLOMEO
> MORRISON & FOERSTER LLP
>
>
> By: /s/ David M. Walsh
>      DAVID M. WALSH
>
> Attorneys for Defendant
> APPLE INC.

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION TO DISMISS ..................................................................i

TABLE OF AUTHORITIES ..........................................................................................................iv

ISSUES TO BE DECIDED .............................................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ...............................................................1

I.      INTRODUCTION AND SUMMARY OF ARGUMENT ................................................1

II.     FACTUAL BACKGROUND ..............................................................................................2

        A.      What is iMessage? ..................................................................................................2

        B.      Plaintiffs' Alleged Experiences .............................................................................3

III.    LEGAL STANDARD ..........................................................................................................4

IV.     ARGUMENT ........................................................................................................................5

        A.      Plaintiffs Cannot Assert a Claim Under the Stored Communications
                Act ............................................................................................................................5

                1.      Apple Did Not Improperly Access an Electronic
                        Communications "Facility" ......................................................................5

                2.      The SCA Does Not Apply to Apple's Own "Facilities" ........................6

                3.      Current iPhone Users Authorized Apple to Access the
                        iMessages They Send .................................................................................8

        B.      Plaintiffs' Wiretap Act Claim Must Be Dismissed .............................................9

                1.      Apple Could Not "Intercept" an Electronic Communication
                        Transmitted Over Its Own Systems ........................................................9

                2.      Apple's Equipment is Exempted Because It Was Used in the
                        Ordinary Course of Business .................................................................10

                3.      Even if Plaintiffs Could Allege an "Interception" Using a
                        "Device," Apple Did Not Act With the Requisite Intent ....................11

                4.      The Wiretap Act Does Not Apply When a Party to the
                        Communication Has Given Consent .......................................................13

        C.      The Good Faith Defense Exception Under the Wiretap Act and
                SCA Bar Plaintiffs' Claims .................................................................................13

        D.      Plaintiffs Cannot Allege Viable Claims Under California's
                Consumer Protection Statutes ............................................................................13

                1.      Plaintiffs Lack Standing to Bring Their UCL and CLRA
                        Claims .......................................................................................................14

                2.      Plaintiffs' Fraud-Based UCL and CLRA Claims Do Not
                        Satisfy Rule 9(b)'s Heightened Pleading Requirements ....................16

                        a.      UCL and CLRA Claims Sounding in Fraud Are
                                Subject to Rule 9(b) .....................................................................16

                        b.      Plaintiffs Do Not Plead Any Specific, Actionable
                                Misrepresentations ......................................................................17

|   |   | 3. | Plaintiffs Do Not Plead Any Actionable Omission | 18 |
|---|---|---|---|---|
|   |   |   | a. No Representation in Need of Correction | 18 |
|   |   |   | b. No Obligation to Disclose | 18 |
|   |   | 4. | Plaintiffs Do Not Allege Reliance | 19 |
|   |   |   | a. Plaintiffs Cannot Have Relied on a Purported Misrepresentation They Are Unable to Identify | 19 |
|   |   |   | b. Conclusory Allegations of Reliance Are Insufficient | 19 |
|   |   | 5. | Plaintiffs Do Not Otherwise State a Claim Under the "Unlawful" Prong of the UCL | 20 |
|   |   | 6. | Plaintiffs Do Not Otherwise State a Claim Under the "Unfair" Prong of the UCL | 20 |
|   |   | 7. | Plaintiffs Do Not State a Claim Under California's Consumers Legal Remedies Act Based on the Messages Application | 22 |
| V. | CONCLUSION |   |   | 23 |

TABLE OF AUTHORITIES TO MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION TO DISMISS
CASE NO. 5:14-CV-02285 LHK
la-1255899

iii

**CASES**

*Aron v. U-Haul Co. of Cal.*,
  143 Cal. App. 4th 796 (2006) ........................................................................... 14

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ........................................................................................ 4, 5

*Baltazar v. Apple, Inc.*,
  No. CV-10-3231-JF, 2011 WL 588209 (N.D. Cal. Feb. 10, 2011) ................ 18, 19

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ........................................................................................ 4, 5

*Berry v. Am. Exp. Publ'g, Inc.*,
  147 Cal. App. 4th 224 (2007) ........................................................................... 23

*Birdsong v. Apple Inc.*,
  590 F.3d 955 (9th Cir. 2009) ............................................................................ 14

*Bunnell v. Motion Picture Ass'n of Am.*,
  567 F. Supp. 2d 1148 (C.D. Cal. 2007) .............................................................. 9

*Butera & Andrews v. Int'l Bus. Machs. Corp.*,
  456 F. Supp. 2d 104 (D.D.C. 2006) .................................................................. 11

*Buza v. Yahoo, Inc.*,
  No. C 11-4422 RS, 2011 U.S. Dist. LEXIS 122806 (N.D. Cal. Oct, 24, 2011) ....... 7

*Cel-Tech Communicatons, Inc. v. Los Angeles Cellular Tel. Co.*,
  20 Cal. 4th 163 (1999) ..................................................................................... 21

*Cornerstone Consultants, Inc. v. Prod. Input Solutions, L.L.C.*,
  789 F. Supp. 2d 1029 (N.D. Iowa 2011) ............................................................. 5

*Crowley v. CyberSource Corp.*,
  166 F. Supp. 2d 1263 (N.D. Cal. 2001) .............................................................. 7

*Daugherty v. Am. Honda Motor Co. Inc.*,
  144 Cal. App. 4th 824 (2006) ........................................................................... 20

*Drum v. San Fernando Valley Bar Ass'n*,
  182 Cal. App. 4th 247 (2010) ........................................................................... 21

*Durell v. Sharp Healthcare*,
  183 Cal. App. 4th 1350 (2010) .................................................................... 15, 19

TABLE OF AUTHORITIES TO MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION TO DISMISS
CASE NO. 5:14-CV-02285 LHK
la-1255899

iv

*Ebeid ex rel. U.S. v. Lungwitz,*
    616 F.3d 993 (9th Cir. 2010) ............................................................................................. 16

*Farmers Ins. Exch. v. Superior Court,*
    2 Cal. 4th 377 (1992) ...................................................................................................... 20

*Fayer v. Vaughn,*
    649, F.3d 1061, 1064 (9th Cir. 2011) (per curiam) ............................................................ 5

*Ferrington v. McAfee, Inc.,*
    No. 10-CV-01455-LHK 2010 WL 3910169 (N.D. Cal. Oct. 5, 2010) ................................ 22

*Fraser v. Nationwide Mut. Ins. Co.,*
    352 F.3d 107 (3d Cir. 2003) ............................................................................................. 7

*Freedom Banc Mortg. Servs., Inc. v. O'Harra,*
    2:11-cv-02073, 2012 WL 3862209 (S.D. Ohio Sept. 5, 2012) ........................................... 6

*Freeman v. Wal-Mart Stores, Inc.,*
    111 Cal. App. 4th 660 (2003) .......................................................................................... 22

*Garcia v. City of Laredo,*
    702 F.3d 788 (5th Cir. 2012) ............................................................................................ 6

*Hall v. EarthLink Network, Inc.,*
    396 F.3d 500 (2d Cir. 2005) ........................................................................................... 11

*Herrington v. Johnson & Johnson Consumer Cos. Inc.,*
    No. C 09-1597 CW, 2010 WL 3448531 (N.D. Cal. Sept. 1, 2010) ............................. 16, 20

*Herskowitz v. Apple Inc.,*
    940 F. Supp. 2d 1131 (N.D. Cal. 2013) .......................................................................... 21

*Hodges v. Apple Inc.,*
    13-CV-01128-WHO, 2013 WL 4393545 (N.D. Cal. Aug. 12, 2013) ................................ 20

*Hovsepian v. Apple, Inc.,*
    No. 08-5788 JF (PVT), 2009 WL 5069144 (N.D. Cal. Dec. 17, 2009) ............................. 16

*Ideal Aerosmith, Inc. v. Acutronic USA, Inc.,*
    Civil Action No. 07-1029, 2007 WL 4394447 (E.D. Pa. Dec. 13, 2007) ............................ 9

*In re Facebook PPC Adver. Litig.,*
    No. 09-3043-JF, 2010 WL 3341062 (N.D. Cal. Aug. 25, 2010) ...................................... 18

*In re Google, Inc. Privacy Policy Litig.,*
    No. C 12-01382 PSG, 2012 WL 6738343 (N.D. Cal. Dec. 28, 2012) .............................. 10

*In re iPhone 4S Consumer Litig.,*
    No. C 12-1127 CW, 2013 WL 3829653 (N.D. Cal. July 23, 2013) .................................. 19

*In re iPhone Application Litig.*,
   Case No.: 11-MD-02250-LHK, 2013 WL 6212591 (N.D. Cal. Nov. 25, 2013) .................... 14

*In re iPhone Application Litig.*,
   No. 11-MD-002250-LHK, 2011 WL 4403963 (N.D. Cal. Sept. 20, 2011) ........................... 22

*In re Linked In User Privacy Litig.*,
   932 F. Supp. 2d 1089 (N.D. Cal. 2013) ................................................................ 15

*In re Pharmatrak, Inc.*,
   329 F.3d 9 (1st Cir. 2003) ................................................................................ 12

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
   903 F. Supp. 2d 942 (S.D. Cal. 2012) .......................................................... 14, 16

*In re: iPhone Application Litig.*,
   844 F. Supp. 2d 1040 (N.D. Cal. 2012) (Koh, J.) ............................................. 5, 6

*In re: Yahoo Mail Litig.*,
   Case No. 5:13-cv-04980-LHK, at 18 (N.D. Cal. Aug. 12, 2014) (Koh, J.) ............................. 7

*Indep. Cellular Tel., Inc. v. Daniels & Assocs.*,
   863 F. Supp. 1109 (N.D. Cal. 1994) ..................................................................... 20

*Jones v. The H Group*,
   No. 3:11–CV–01012–BR, 2012 WL 195724 (D. Ore. Jan. 23, 2012) ................................ 6, 7

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) ............................................................. 16, 17, 18

*Konop v. Hawaiian Airlines, Inc.*,
   302 F.3d 868 (9th Cir. 2002) ................................................................................ 9

*Kwikset v. Super. Ct.*,
   51 Cal. 4th 310 (2011) ........................................................................................ 19

*Laster v. T-Mobile USA, Inc.*,
   407 F. Supp. 2d 1181 (S.D. Cal. 2005), *aff'd*, 252 Fed. App'x 777 (2007) ........................... 19

*Lazette v. Kulmatycki*,
   949 F. Supp. 2d 748 (N.D. Ohio 2013) .................................................................. 6

*Meyer v. Sprint Spectrum L.P.*,
   45 Cal. 4th 634 (2009) ........................................................................................ 19

*People v. McKale*,
   25 Cal. 3d 626 (1979) ........................................................................................ 20

*Perkins v. LinkedIn Corp.*,
   13-CV-04303-LHK, 2014 WL 2751053 (N.D. Cal. June 12, 2014) ................................ 8, 13

TABLE OF AUTHORITIES TO MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION TO DISMISS
CASE NO. 5:14-CV-02285 LHK
la-1255899

vi

*Pirozzi v. Apple Inc.*,
    913 F. Supp. 2d 840 (N.D. Cal. 2012) ............................................................... 15

*Quon v. Arch Wireless Operating Co., Inc.*,
    529 F.3d 892 (9th Cir. 2008), *rev'd on other grounds*, 560 U.S. 746 (2010) ......................... 7

*Rice v. Rice*,
    951 F.2d 942 (8th Cir. 1991) ............................................................................. 13

*Rubio v. Capital One Bank*,
    613 F.3d 1195 (9th Cir. 2010) ........................................................................... 14

*Sams v. Yahoo! Inc.*,
    713 F.3d 1175 (9th Cir. 2013) ........................................................................... 13

*Sanders v. Robert Bosch Corp.*,
    38 F.3d 736 (4th Cir. 1994) ............................................................................... 12

*Sears v. Cnty. of Monterey*,
    C 11-01876 SBA, 2012 WL 368688 (N.D. Cal. Feb. 3, 2012) ..................................... 5

*State Wide Photocopy, Corp. v. Tokai Fin. Servs., Inc.*,
    909 F. Supp. 137 (S.D.N.Y.1995) ....................................................................... 7

*Theofel v. Farey-Jones*,
    359 F.3d 1066 (9th Cir. 2003) ............................................................................. 9

*United States v. Townsend*,
    987 F.2d 927 (2d Cir. 1993) ............................................................................... 11

*Wilson v. Hewlett-Packard Co.*,
    668 F.3d 1136 (9th Cir. 2012) ........................................................................... 18

*Wofford v. Apple Inc.*,
    No. 11-CV-0034 ABJ NLA, 2011 WL 5445054 (S.D. Cal. Nov. 9, 2011) ...................... 23

**STATUTES**

18 U.S.C. § 2510 ................................................................................................. 9, 10

18 U.S.C. § 2511 ......................................................................................... 9, 11, 13, 14

18 U.S.C. § 2520(d) ............................................................................................... 13

18 U.S.C. § 2701 ............................................................................................... 5, 8, 14

18 U.S.C. § 2707(e) ............................................................................................ 13, 14

Cal. Bus. & Prof. Code § 17200, *et seq.* ..................................................................... 4

Cal. Civ. Code § 1770(a) .................................................................................... 22

**OTHER AUTHORITIES**

Fed. R. Civ. P. 9(b) ........................................................................... 16, 18, 19

Fed. R. Civ. P. 12(b)(6) ............................................................................ 2, 4

S. Rep. 99-541 (1986) ................................................................................ 12

TABLE OF AUTHORITIES TO MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION TO DISMISS
CASE NO. 5:14-CV-02285 LHK
la-1255899

viii

**ISSUES TO BE DECIDED**

1. Whether Plaintiffs state all required elements of a claim under the federal Stored Communications Act ("SCA").

2. Whether the SCA applies to the conduct alleged in the Complaint.

3. Whether Plaintiffs state all required elements of a claim under the Wiretap Act.

4. Whether the Wiretap Act applies to the conduct alleged in the Complaint.

5. Whether Plaintiffs have statutory standing to assert claims under California's Unfair Competition Law ("UCL") and Consumers Legal Remedies Act ("CLRA").

6. Whether Plaintiffs state all required elements under the UCL

7. Whether Plaintiffs state all required elements under the CLRA.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I. INTRODUCTION AND SUMMARY OF ARGUMENT**

This case is about Apple's iMessage service — Apple's free alternative to the conventional SMS/MMS text messages that are sent through third-party wireless carriers. iMessages are transmitted through Apple's own secure internal encrypted systems, thus enabling users to avoid text message fees charged by their wireless carriers. To send and receive iMessages, users must have an Apple device, the appropriate iOS/OS operating software, and Apple's proprietary "Messages" application. As such, this free benefit can be provided only to Apple users; iMessaging does not work with other manufacturers' devices.

Each of the Plaintiffs in this action purchased an iPhone and used Apple's free iMessage service to send text messages. Two of the Plaintiffs — Mr. Backhaut and Mr. Morris — later switched to a non-Apple device, and each claims that he then stopped receiving certain text messages from current Apple device users for a certain period of time. Neither Mr. Backhaut nor Mr. Morris claims that he notified Apple when he switched to a non-Apple device. Rather, Plaintiffs seem to contend that Apple should have automatically and instantly detected that the telephone numbers they had used with iMessage were now associated with a non-iMessageable device — a capability Apple never claimed to possess.

Apple strives to create high-quality products and takes the satisfaction of its customers extremely seriously, but the law does not provide a remedy when, as here, that technology simply does not function as Plaintiffs believe it should. Plaintiffs' attempt to transform their alleged experiences into violations of federal and state statutes should be rejected:

- ***Plaintiffs Cannot State a Claim for Violation of the Stored Communications Act or the Wiretap Act***: Plaintiffs cannot allege the required elements of their Stored Communications Act ("SCA") and Electronic Communications Privacy Act ("Wiretap Act") claims. Even if they could, the statutes do not apply to the conduct alleged in the Complaint, and multiple statutory exceptions preclude liability for the conduct alleged. Apple cannot be sued under either Act because it acted in good faith reliance on the legislative authorizations included in each.

- ***Plaintiffs Lack Standing to Bring Their Consumer Protection Claims***: Plaintiffs cannot assert California consumer protection law claims because they do not allege that they suffered any loss of money or property caused by reliance on a misrepresentation by Apple.

- ***Plaintiffs Were Not Misled by Apple***: Plaintiffs' claims under California's Unfair Competition Law ("UCL") and Consumers Legal Remedies Act ("CLRA") are based on their assertion that they were misled by Apple. But, Plaintiffs do not identify a single misrepresentation by Apple that they claim that they saw, heard, and relied upon.

- ***Plaintiffs' Claims Under the UCL or CLRA Do Not Meet Even Minimum Pleading Requirements***: Plaintiffs' allegations are inadequate under: (1) the unlawful prong of the UCL (no predicate unlawful act); and (2) the "unfair" prong (no statutorily rooted unfair practice and no substantial harm to consumers that outweighs iMessage's many benefits). Also, Plaintiff has no CLRA claim because iMessage is a component of Apple's software, and the CLRA does not address software claims.

These deficiencies cannot be cured through amendment. Apple respectfully requests that the Court dismiss Plaintiffs' claims pursuant to Rule 12(b)(6).

## II.    FACTUAL BACKGROUND

### A.    What is iMessage?

iMessage is a free service that allows iPhone users to send text-based messages to other users that have iMessage enabled on their devices. (Compl. ¶ 9.) iMessage and its client application "Messages" provide "an 'alternative' to the standard SMS/MMS [system] used to send text messages on other mobile phones." (*Id.* ¶ 10.) Users generally have to pay for a text messaging plan to wireless carriers in order to send conventional SMS/MMS text messages. (*See id.* ¶¶ 10, 13, 17.) Messages sent through iMessage, however, are free over Wi-Fi. (*Id.* ¶ 17-19.) Apple first introduced iMessage in October, 2011 as a part of its iOS 5 software update. (*Id.* ¶ 8.) Users can choose whether or not to use iMessage. Users can also turn off iMessage at any time. (*See* Decl. of Andre Boule ("Boule Decl.") ¶¶ 2-5, Exs. A-D ¶ 4(e).)

Apple iPhones display text messages — both sent and received — in colored backgrounds. There are only two color options: blue and green. If a message is in the conventional SMS/MMS system, it will appear on the iPhone screen with a green background. If a message is sent through iMessage (from one Apple device to another), it will be displayed with a blue background. Thus, "the sender can determine how the outgoing message was sent through the background color of the message." (Compl. ¶ 14.)

According to Plaintiffs, if a current iPhone/iMessage user sends a text message to a contact who is a former iPhone/iMessage user (but now has a non-Apple device), that message is routed through iMessage and is never delivered to the intended recipient. (*Id.* ¶ 20.) Plaintiffs claim that the message is not received because Apple does not automatically (without notice from the user) detect that a user has switched to a non-Apple device and, then, does not immediately remove the former iPhone/iMessage user's information from Apple's iMessage system. (*Id.* ¶¶ 22-23.)

### B. Plaintiffs' Alleged Experiences

Plaintiffs Adam and Joy Backhaut each purchased an iPhone 5 in December 2012 at Best Buy. (*Id.* ¶¶ 39-40.) While they were in the store, a Best Buy employee enabled the iMessage service on their new iPhones. (*Id.* ¶¶ 39-40.) Plaintiff Kenneth Morris purchased his iPhone 5 in October 2012. (*Id.* ¶ 47.) He "used iMessage on that iPhone 5." (*Id.*) None of the Plaintiffs claims that he or she saw any advertisements or marketing materials, or was exposed to any other representations by Apple, that caused him or her either to purchase an iPhone or to enable and use iMessage.

Mr. Backhaut alleges that he replaced his iPhone 5 with an "HTC One" in December 2013. (*Id.* ¶ 41.) Mrs. Backhaut did not replace her iPhone. She "continued to text her husband as she had previously us[ing] the Messages app on her iPhone." (*Id.* ¶ 43.) She claims that her iPhone indicated that certain messages to Mr. Backhaut were "delivered," but she does not state whether these messages were displayed in blue, signifying that the messages were sent via the iMessage application. (*Id.* ¶¶ 14, 43.) Mr. Backhaut allegedly never received those messages sent by his wife. (*Id.* ¶ 43.)

Plaintiff Kenneth Morris replaced his iPhone 5 with "an Android-based phone in December 2012." (*Id.* ¶ 47.) Like Mr. Backhaut, he claims that, without notifying Apple and apparently while the iMessage application was still activated on his iPhone, he switched to a non-Apple device and subsequently had his text messages "intercepted by Apple's iMessage system." (*Id.* ¶ 49.)

Neither Mr. Backhaut nor Mr. Morris alleges that he took any steps to disassociate his telephone number from iMessage, or to notify Apple in any way, prior to switching to a non-Apple device. Each alleges that he "attempted to remove his phone number from the iMessage system" *after* switching to his non-Apple device, but neither describes what he claims to have done. (*See id.* ¶¶ 45, 49.) Mr. Morris also alleges that he asked his contacts to take certain actions in order to remedy the issue (Mr. Backhaut does not allege that he notified his contacts that he switched from an iPhone to a non-Apple device). (*Id.* ¶ 50.) He claims that this worked until Apple released a subsequent update to its iOS in April 2014. (*Id.* ¶¶ 7, 50.)

Plaintiffs filed their Complaint against Apple on May 16, 2014. They assert claims for violation of: the Stored Communications Act, 18 U.S.C. § 2701, *et seq.* ("SCA"); the Electronic Communications Privacy Act, 18 U.S.C. § 2510, *et seq.* ("Wiretap Act"); the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.* ("UCL"); and the Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.* ("CLRA") on behalf of a putative class of "[a]ll persons residing in the United States who are former iPhone/iMessage Users who switched to a non-iOS device and whose text messages from current iMessage-enabled iPhone users were intercepted by iMessage and not received." (Compl. ¶ 51.)

## III.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed for failure to state a claim if the plaintiff either fails to state a cognizable legal theory or has not alleged sufficient facts to support a cognizable legal theory. *See* Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562-63 (2007). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citation omitted). The complaint must allege

facts which, when taken as true, raise more than a speculative right to relief. *Twombly*, 550 U.S. at 555. The Court is not required to accept "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678; *see also Fayer v. Vaughn*, 649, F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (courts are not required to "assume the truth of legal conclusions merely because they are cast in the form of factual allegations" (internal quotation marks omitted)).

## IV. ARGUMENT

### A. Plaintiffs Cannot Assert a Claim Under the Stored Communications Act

The SCA governs certain unauthorized access to communications while they are in electronic storage. It imposes liability on anyone who " '(1) *intentionally accesses without authorization a facility* through which an electronic communication service is provided; or (2) *intentionally exceeds an authorization* to access that *facility*; and thereby obtains, alters, or prevents authorized access to a wire or electronic communication *while it is in electronic storage* in such system.' " *In re: iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1056-57 (N.D. Cal. 2012) (Koh, J.) (quoting and citing 18 U.S.C. §§ 2701(a), 2707) (emphasis added). To state a claim for a violation of Section 2701, Plaintiffs must: (1) identify a "facility through which an electronic communication service," or ECS, "is provided"; (2) describe the electronic communications that were in "electronic storage" in that facility; (3) plead facts that would support the finding of an unauthorized "access"; and (4) allege that Apple's supposed "unauthorized access or access in excess of authorization caused actual harm." *See Sears v. Cnty. of Monterey*, C 11-01876 SBA, 2012 WL 368688, at *12 (N.D. Cal. Feb. 3, 2012) (describing elements of SCA claim); *Cornerstone Consultants, Inc. v. Prod. Input Solutions, L.L.C.*, 789 F. Supp. 2d 1029, 1047 (N.D. Iowa 2011) (same).

#### 1. Apple Did Not Improperly Access an Electronic Communications "Facility"

Plaintiffs are missing the core element of an SCA claim: the electronic communications "facility" that Apple allegedly accessed without authorization. 18 U.S.C. § 2701(a)(1). The SCA

addresses "facilities" that are "operated by electronic communications providers and used to store and maintain electronic storage." *Freedom Banc Mortg. Servs., Inc. v. O'Harra*, 2:11-cv-02073, 2012 WL 3862209, at *9 (S.D. Ohio Sept. 5, 2012).

Plaintiffs appear to allege that the "facilities" at issue are "the wireless accounts of Plaintiffs and the proposed class." (Compl. ¶ 62.) Plaintiffs also suggest that Apple somehow accessed the "facilities" of third-party wireless carriers without authorization. (*Id.* ¶ 63.) Neither theory is possible because Plaintiffs admit that the messages at issue ***bypassed*** those purported facilities entirely. Specifically, Plaintiffs claim that when a current iPhone/iMessage user sends a message to a former iPhone/iMessage user, that message is delivered as an iMessage. (Compl. ¶ 20.) As Plaintiffs expressly state, iMessages are not transmitted through, or stored in, any third-party facility: "Apple's iMessage system for transmitting text messages ***bypasses a user's SMS/MMS system***, and, therefore, ***does not route through the user's text message plan***." (Compl. ¶ 19 (emphasis added).) Apple could not access Plaintiffs' "wireless accounts" or any third party SMS/MMS facility where Plaintiffs specifically allege that the messages "bypassed" those systems completely. The iMessages at issue did not touch — and, thus, were not electronically stored in — any wireless carriers' systems.

Plaintiffs' inability to allege that Apple gained unauthorized access to an electronic communications "facility" is fatal to their SCA claim.[1]

### 2. The SCA Does Not Apply to Apple's Own "Facilities"

To the extent Plaintiffs intend to argue that Apple gained unauthorized access to its own "facilities," the SCA specifically exempts such conduct. Section 2701(a) of the SCA "do[es] not apply 'to conduct authorized (1) by the person or entity providing a wire or electronic communications service . . . ." *In re: iPhone Application Litig.*, 844 F. Supp. 2d at 1057 (quoting 18 U.S.C. § 2701(c)); *see also Jones v. The H Group*, No. 3:11–CV–01012–BR, 2012 WL

---

[1] To the extent Plaintiffs intend to argue that the "facilities" at issue are the sender or recipient mobile devices, that theory has been soundly rejected by this and numerous other courts. *See, e.g.*, *Garcia v. City of Laredo*, 702 F.3d 788, 792-93 (5th Cir. 2012); *Lazette v. Kulmatycki*, 949 F. Supp. 2d 748, 755-56 (N.D. Ohio 2013); *In re iPhone Application Litig.*, 844 F. Supp. 2d at 1057.

195724, at *4-5 (D. Ore. Jan. 23, 2012) ("Here Defendants are the providers of the electronic communication service and Plaintiffs do not allege nor could Plaintiffs credibly allege Defendants acted without their own authority."). A defendant thus cannot be held liable for accessing electronic communications stored on its own "facilities," to which it necessarily has authorized access. *Id.*; *Crowley v. CyberSource Corp.*, 166 F. Supp. 2d 1263, 1270-71 (N.D. Cal. 2001).

Such is the case here. As the provider of iMessage, an electronic communications service,[2] Apple cannot be held liable for accessing iMessages sent through its own "facilities" — facilities to which Apple had its "own authority" to access. *Jones*, 2012 WL 195724, at *4. Indeed, courts have repeatedly dismissed claims where, as here, plaintiffs alleged that defendants improperly accessed communications stored on their own systems. *See, e.g.*, *In re: Yahoo Mail Litig.*, Case No. 5:13-cv-04980-LHK, at 18 (N.D. Cal. Aug. 12, 2014) (Koh, J.) (dismissing with prejudice SCA claim under Section 2701(a) because defendant had immunity for accessing electronic communications stored on its own systems); *Buza v. Yahoo, Inc.*, No. C 11-4422 RS, 2011 U.S. Dist. LEXIS 122806, at *1, 3-4 (N.D. Cal. Oct, 24, 2011) (dismissing claims based on alleged unlawful access to stored emails by an ECS provider); *Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 115 (3d Cir. 2003) (ECS providers are not liable for searching stored communications on their own systems); *Crowley*, 166 F. Supp. 2d at 1272 (finding that plaintiff's argument that defendant "had limited access to its own systems, strains credulity"); *State Wide Photocopy, Corp. v. Tokai Fin. Servs., Inc.*, 909 F. Supp. 137, 145 (S.D.N.Y.1995) ("Plaintiff claims Tokai exceeded its authorization to access the facility, but it also suggests that the facility is Tokai, itself. . . . For State Wide's claim to stand, it would require the Court to assume that, paradoxically, Tokai is the facility at issue, yet that facility has limited access to itself.").

---

[2] With respect to iMessage, Apple is an ECS provider. (*See, e.g.*, Compl. ¶¶ 8 (describing iMessage as a "proprietary messaging service"); 10 (describing the iMessage "service" as an "alternative" to SMS/MMS messaging); *see also Quon v. Arch Wireless Operating Co., Inc.*, 529 F.3d 892, 901 (9th Cir. 2008), *rev'd on other grounds*, 560 U.S. 746 (2010) (finding that an electronic communication service under the SCA includes the "text-messaging pager services" provided by defendant).

**3.    iPhone Users Authorize Apple to Access Their iMessages**

The iPhone users who sent the messages at issue consented to Apple's access to those messages.[3]  The SCA exempts from its ambit conduct authorized by a party to the communication.  *See* 18 U.S.C. § 2701(c)(2); *see also Perkins v. LinkedIn Corp.*, 13-CV-04303-LHK, 2014 WL 2751053, at *13-14 (N.D. Cal. June 12, 2014) (dismissing SCA claim where plaintiffs consented to defendant's collection of email addresses from plaintiffs' contact lists).

iPhone/iMessage users consent to Apple's access by agreeing to the terms of Apple's iOS software license agreement.  iMessage users agree to these terms when they first download or use the iOS software that includes the iMessage application.  (Boule Decl. ¶ 3.)  That agreement provides, in relevant part:

> (e) iMessage.  . . .  The iMessage service requires a Wi-Fi or cellular data connection.  **To facilitate delivery of your iMessages and to enable you to maintain conversations across your devices, Apple may hold your iMessages in encrypted form for a limited period of time**. . . .  You may turn off the iMessage service by going to the Messages setting on your iOS Device.

(*Id.* ¶¶ 2-5, Exs. A-D ¶ 4(e) (emphasis added).)  Plaintiffs do not dispute that Apple has authorization to access the messages of current iPhone/iMessage users.  (*See* Compl. ¶ 22.)  As they allege, "Apple's authorization to access the text messages of its iPhone/iMessage User customers ends [only] when they cease to be iPhone users."  (*Id.*)

As set forth in Apple's agreements with iMessage users and confirmed by Plaintiffs' own allegations, Apple has the consent of current iPhone/iMessage users — including Mrs. Backhaut — to access the text messages that they send via iMessage.  Apple therefore has consent to access all of the messages at issue in this litigation, which include only "text messages from current iMessage-enabled iPhone users."  (Compl. ¶ 17.)

---

[3] As stated in iOS software license agreement, excerpted below, iMessages are stored in encrypted form, so any "access" by Apple is limited to the transmission of fully encrypted messages.

## B. Plaintiffs' Wiretap Act Claim Must Be Dismissed

### 1. Apple Could Not "Intercept" an Electronic Communication Transmitted Over Its Own Systems

The Wiretap Act governs communications *while in transit* (rather than electronic storage) and makes it an offense to "intentionally intercept [] . . . any wire, oral, or electronic communication." *Bunnell v. Motion Picture Ass'n of Am.*, 567 F. Supp. 2d 1148, 1152 (C.D. Cal. 2007) (citing 18 U.S.C. § 2511(1)(a)). The Act allows an action against any person who "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication." 18 U.S.C. § 2511(1)(a). "Intercept" is narrowly defined as "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." *Id.* § 2510(4); *see also Theofel v. Farey-Jones*, 359 F.3d 1066, 1077 (9th Cir. 2003) (holding that the Wiretap Act "applies only to 'acquisition contemporaneous with transmission' "); *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 877 (9th Cir. 2002) (same). The Act defines "device" as "any device or apparatus which can be used to intercept a wire, oral, or electronic communication," subject to certain exclusions that are discussed below. 18 U.S.C. § 2510(5).

Plaintiffs' Wiretap Act allegations essentially recite the provisions of the statute. Plaintiffs do not allege how Apple intercepted their messages or what "device" Apple allegedly used to do so. Instead, Plaintiffs assert that Apple "receives and stores [] messages" sent from current iPhone/iMessage users to former iPhone/iMessage users through the use of an unidentified "device" under Section 2511. (Compl. ¶ 70.) Plaintiffs' unsupported allegations and legal conclusions do not satisfy the pleading standard.

Indeed, Plaintiffs cannot allege that Apple used a "device" within the meaning of the Wiretap Act. They identify only the instruments Apple used to *facilitate* iMessage communications. (*See* Compl. ¶¶ 9-13.) Under the statute, there is no "interception" when the provider, like Apple, simply relays electronic communications over its own systems. *See Ideal Aerosmith, Inc. v. Acutronic USA, Inc.*, Civil Action No. 07-1029, 2007 WL 4394447, at *5 (E.D. Pa. Dec. 13, 2007) (finding no Wiretap Act violation where defendant "employed no device to

acquire [certain] e-mails, but was merely, as owner of [the email] system, a direct party to the communication").

**2.    Apple's Equipment is Exempted Because It Was Used in the Ordinary Course of Business**

The equipment used by Apple to acquire messages falls squarely within the Wiretap Act's "ordinary course of business" exception.  The Wiretap Act's definition of "electronic, mechanical, or other device" specifically excludes:

> (a) any telephone or telegraph instrument, equipment or facility, or any component thereof (i) furnished to the subscriber or user by a provider of wire or electronic communication service in the ordinary course of its business and being used by the subscriber or user in the ordinary course of its business; or (2) being used by a provider of wire or electronic communication service in the ordinary course of its business . . . .

18 U.S.C. § 2510(5)(a).

Although Plaintiffs do not specify what "device" they have in mind in making their Wiretap Act claim, in fact, the only devices they could identify would necessarily be "instrument[s], equipment or facility[ies], or any component thereof" being used in the ordinary course of business.

***Sender's iPhone***:  The sender's iPhone would fall squarely within the exclusions set forth in Section 2510(5)(a) as a telephone furnished to and used by a subscriber or user (i.e., the sender), by a provider of wire or electronic communication service in the ordinary course of its business (i.e., Apple).

***Apple's iMessage System***:  Any other Apple "device" or instrument used to transmit iMessages — regardless of whether delivery is successful — is necessarily an integral part of the transmission of the message and, therefore, used by Apple in the ordinary course of business.  *See In re Google, Inc. Privacy Policy Litig.*, No. C 12-01382 PSG, 2012 WL 6738343, at *5-6 (N.D. Cal. Dec. 28, 2012).  Plaintiffs cannot claim that Apple "intercepted" a communication from itself where the basic iMessage service can function only if Apple acquires the electronic communication.  *See id.*

The Second Circuit's opinion in *Hall v. EarthLink Network, Inc.* is on point. In *Hall*, the plaintiff signed up for internet services and email with EarthLink. *Hall v. EarthLink Network, Inc.*, 396 F.3d 500, 502 (2d Cir. 2005). The plaintiff's "@earthlink.net" email account was eventually closed; however, EarthLink continued to receive and store email messages sent to the plaintiff's closed "@earthlink.net" account by third parties. *Id.* Plaintiff claimed that EarthLink intercepted his email in violation of the Wiretap Act "by intentionally continuing to receive messages sent to [his "@earthlink.net" account] after the termination of his account." *Id.* at 502-03. The court concluded that "EarthLink acquired the contents of electronic communications but did so in the ordinary course of business and thus did not use 'any electronic, mechanical, or other device' as defined by the statute." *Id.* at 504. The court reasoned that, if providers like EarthLink were not covered by the "ordinary course of business exception," they "would constantly be intercepting communications under [the Wiretap Act] because their basic services involve the 'acquisition of the contents' of electronic communication. Congress could not have intended this absurd result." *Id.* at 505.

The reasoning and conclusion in *Hall* applies with equal force here. Apple relays encrypted iMessages initiated by Apple users over its secure systems in the ordinary course of the transmission process. If the transmission of an iMessage is not successful or is directed to a "closed" account, Apple's systems do not suddenly transform from components used to *facilitate* communications into "devices" used to *intercept* communications.

### 3. Apple Did Not Act With the Requisite Intent

Plaintiffs cannot allege any "intentional" interception. *See* 18 U.S.C. § 2511(1)(a). The Wiretap Act requires a finding that "the defendant acted deliberately and purposefully; that is, defendant's act must have been the product of defendant's **conscious objective** rather than the product of a mistake or an accident." *United States v. Townsend*, 987 F.2d 927, 930 (2d Cir. 1993) (emphasis added); *see also Butera & Andrews v. Int'l Bus. Machs. Corp.*, 456 F. Supp. 2d 104, 109-110 (D.D.C. 2006) (dismissing Wiretap Act because plaintiff failed to plead the requisite "intentional" misconduct by computer manufacturer). "Intentional" conduct covers only a limited category of actions where the objective is the interception itself:

> As used in the [Wiretap] Act, the term 'intentional' is narrower than the
> dictionary definition of 'intentional.' 'Intentional' means more than that one
> voluntarily engaged in conduct or caused a result. Such conduct or the
> causing of the result must have been the person's **conscious objective**. An
> 'intentional' state of mind means that one's state of mind is intentional as to
> one's conduct or the result of one's conduct if such conduct or result is one's
> **conscious objective**. The intentional state of mind is applicable only to
> conduct and results. Since one has no control over the existence of
> circumstances, one cannot 'intend' them.

S. Rep. 99-541, at 23 (1986) (emphasis added). Congress made clear that "[a]n act is not intentional if it is the product of inadvertence or mistake." *In re Pharmatrak, Inc.*, 329 F.3d 9, 23 (1st Cir. 2003).

Plaintiffs do not allege that Apple acted with the "conscious objective" to intercept messages destined for former Apple users. At most, Plaintiffs' allegations suggest that Apple mistakenly treated former Apple users as iMessageable when they no longer were. Plaintiffs imply that Apple should have automatically and instantly detected when users switched to non-Apple devices — a capability Apple never claimed to have. Further, the articles Plaintiffs cite in their Complaint demonstrate that Apple affirmatively and expressly advised users to turn off iMessage before switching to a non-Apple device. (*See* Compl. ¶ 29, Decl. of Kai S. Bartolomeo ("Bartolomeo Decl."), Ex. 4). "If you don't, other iOS devices might continue to try to send you messages using iMessage, instead of using SMS or MMS, for up to 45 days." (Bartolomeo Decl., Ex. 4.) Apple could not have a "conscious objective" to intercept text messages when Apple publicly advised users to turn off iMessage before switching to a non-Apple device so that text messages would ***not*** be routed through the iMessage system. Based on Plaintiffs' allegations, they cannot allege that Apple had a "conscious objective" to intercept former customers' text messages. *See Sanders v. Robert Bosch Corp.*, 38 F.3d 736, 742-43 (4th Cir. 1994) (alleged interception due to unknown design defect insufficient to establish intent under Wiretap Act).[4]

---

[4] To the extent Plaintiffs intend to rely on the third-party Internet articles cited in Paragraphs 25-29 to establish that Apple was aware of the issues they allege, two of the five articles were posted just days before Plaintiffs filed suit. Of the remaining three, one discusses an anonymous user who switched to a non-Apple device *that night*, presumably just minutes or hours before making his or her complaint (*see* Compl. ¶ 25, Bartolomeo Decl., Ex. 1); another laments the fact that, after a user switches to a non-Apple device, "*iMessages* continue to be delivered over *iMessage*--they don't revert to SMS *automatically* . . . ." (Compl. ¶ 26;

**4.     The Wiretap Act Does Not Apply When a Party to the Communication Has Given Consent**

As with the SCA, if either party to a communication consents to its "interception," then there is no violation of the Wiretap Act. 18 U.S.C. § 2511(2)(d); *Perkins*, 2014 WL 2751053, at *13-14 (dismissing Wiretap Act claim where plaintiffs consented to defendant's collection of email addresses from plaintiffs' contact lists). Here, as discussed above, Plaintiffs concede that *current* iPhone/iMessage users have authorized Apple to use its own instruments and systems to transmit iMessages (in encrypted form). (*See* Compl. ¶ 22.) Additionally, by agreeing to the iOS software license agreement, all iPhone/iMessage users have consented to Apple's transmission of iMessages through Apple's system. (Boule Decl., Exs. A-D ¶ 4(e).) Thus, Apple has consent to transmit iMessages sent by current iPhone/iMessage users — all of the messages at issue in this litigation.

**C.     The Good Faith Defense Exception Under the Wiretap Act and SCA Bar Plaintiffs' Claims**

The good faith exception under the SCA and Wiretap Act is a complete defense to liability. Both the Wiretap Act and the SCA provide that "a good faith reliance on — (1) a court warrant or order, a grand jury subpoena, a legislative authorization, *or a statutory authorization* . . . is a complete defense against any civil or criminal action brought under this chapter or any other law." 18 U.S.C. § 2520(d); 18 U.S.C. § 2707(e) (emphasis added); *see also Rice v. Rice*, 951 F.2d 942, 944-45 (8th Cir. 1991) (noting § 2520(d)(3)'s good faith defense applies to providers); *Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1180-81 (9th Cir. 2013). The Ninth Circuit recently held that where statutory immunity under the Wiretap Act is based on a good faith belief that the law permits the provider's actions, a plaintiff must plead facts showing a lack of good faith to overcome a motion to dismiss. *Sams*, 713 F.3d at 1181 (finding that plaintiff "pled no facts sufficient to lead to a plausible inference that Yahoo! actually knew that these subpoenas were invalid" and that plaintiff's "sole allegation that Yahoo! did not act in good faith

---

Bartolomeo Decl., Ex. 2 (emphasis added)); and all three discuss solutions for disassociating from iMessage (Compl. ¶¶ 25-27; Bartolomeo Decl., Exs. 1-3).

1  is no more than a threadbare recital of the language of § 2707(e), precisely the kind that we

2  decline to credit").

3      As discussed above, Apple was authorized under the SCA to access electronic

4  communications on its own systems, 18 U.S.C. § 2701(a), (c), and under the Wiretap Act to

5  acquire electronic communications with the consent of a party to the communication (i.e., the

6  current Apple user), 18 U.S.C. § 2511(c).  Further, Apple was authorized to access electronic

7  communications in the ordinary course of its business.  18 U.S.C. 2511(2)(a)(i).  Plaintiffs plead

8  no facts demonstrating that Apple did not act in good faith reliance upon the plain language of the

9  Wiretap Act and the SCA.

**D.      Plaintiffs Cannot Allege Viable Claims Under California's Consumer Protection Statutes**

**1.      Plaintiffs Lack Standing to Bring Their UCL and CLRA Claims**

13      To assert a claim under the UCL and CLRA, Plaintiffs must satisfy the *specific* standing

14  requirements under California's consumer protection statutes.  To assert a UCL claim, a private

15  plaintiff needs to have "suffered injury in fact and . . . lost money or property as a result of the

16  unfair competition."  *Rubio v. Capital One Bank*, 613 F.3d 1195, 1203 (9th Cir. 2010); *see also*

17  *Birdsong v. Apple Inc.*, 590 F.3d 955, 960 (9th Cir. 2009) ("[P]laintiffs must show . . . that they

18  suffered ***distinct and palpable injury*** as a result of the alleged unlawful or unfair conduct.")

19  (emphasis added).  Similarly, to establish standing under the CLRA, a plaintiff "must have

20  'suffer[ed] any damage as a result of the . . . practice declared to be unlawful.' "  *Aron v. U-Haul*

21  *Co. of Cal.*, 143 Cal. App. 4th 796, 802 (2006).  That is, the plaintiff must "allege a '***tangible***

22  increased cost or burden to the consumer.' "  *In re Sony Gaming Networks & Customer Data Sec.*

23  *Breach Litig.*, 903 F. Supp. 2d 942, 965 (S.D. Cal. 2012) (emphasis added) (quoting *Meyer v.*

24  *Sprint Spectrum L.P.*, 45 Cal. 4th 634, 643 (2009)).  Further, when a plaintiff's UCL and CLRA

25  claims are based on a misrepresentation theory, the "plaintiff must have actually relied on the

26  misrepresentation, and suffered economic injury as a result of that reliance, in order to have

27  standing to sue."  *In re iPhone Application Litig.*, Case No.: 11-MD-02250-LHK, 2013 WL

28

6212591, at *6 (N.D. Cal. Nov. 25, 2013); *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1355, 1367 (2010).

Plaintiffs allege two forms of injury: (1) that they paid "for Android phones that do not fully function because of Apple's continued unauthorized registration and use of their phone numbers" (Compl. ¶ 85); and (2) that they paid "more for iPhones than they would have if they had known they would not be able to stop using an iPhone in the future once their numbers were registered in iMessage" (*Id.* ¶ 86). Neither theory is sufficient to confer statutory standing under the UCL and CLRA.

Plaintiffs' first theory of injury is not supported. Nothing in the Complaint supports the notion that Plaintiffs' non-Apple devices failed to function as intended. Apple's alleged "continued unauthorized registration and use of [Plaintiffs'] phone numbers" has nothing to do with the functionality of Plaintiffs' non-Apple phones. Nor do Plaintiffs allege that they purchased their Android phones in reliance on any misrepresentation by Apple. Moreover, this theory of injury does not apply to Mrs. Backhaut, who does not claim to have purchased a non-Apple device.

To establish standing under Plaintiffs' second, "overpayment" theory, they must identify contemporaneous misrepresentations or omissions by Apple that formed the bargain, and their reliance on those misrepresentations when they purchased their mobile devices. *See, e.g.*, *In re Linked In User Privacy Litig.*, 932 F. Supp. 2d 1089, 1093 (N.D. Cal. 2013) (rejecting the "benefit of the bargain" theory of standing where Plaintiffs did "not even allege that they actually read the alleged misrepresentation"); *Pirozzi v. Apple Inc.*, 913 F. Supp. 2d 840, 846-47 (N.D. Cal. 2012) (plaintiff did not suffer an injury-in-fact caused by her alleged overpaying or being induced to purchase an Apple device because plaintiff failed to identify which statements made by Apple she found material to her decision to purchase an Apple device). As discussed below, Plaintiffs do neither. Plaintiffs do not identify any specific misrepresentation or misleading statement by Apple regarding iMessage that they saw, heard, or relied on, or that was in any way material to their respective iPhone purchases. Plaintiffs cannot claim that Apple's supposed misrepresentation or omission caused them to buy, or to over-pay for, their Apple devices when

they allege no facts showing that any misrepresented/omitted information could have been material to their purchases.

### 2. Plaintiffs' Fraud-Based UCL and CLRA Claims Do Not Satisfy Rule 9(b)'s Heightened Pleading Requirements

#### a. UCL and CLRA Claims Sounding in Fraud Are Subject to Rule 9(b)

If a plaintiff relies on allegedly fraudulent conduct as the basis for claims under the CLRA and UCL, those claims are "said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading . . . as a whole must satisfy the particularity requirement of Rule 9(b)." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (internal citations omitted). Such is the case here.

The gravamen of Plaintiffs' consumer protection claims is that Apple "intended that California consumers would be misled and/or deceived into believing that . . . their text messages would be delivered to their intended recipients when in reality they were not." (Compl. ¶ 80; *see also id.* ¶¶ 60, 98-101.) Because Plaintiffs allege fraudulent conduct in support of their UCL and CLRA claims, they must meet the heightened pleading standard under Federal Rule of Civil Procedure 9(b). *Hovsepian v. Apple, Inc.*, No. 08-5788 JF (PVT), 2009 WL 5069144, at *2 (N.D. Cal. Dec. 17, 2009) ("Because [plaintiff's] CLRA and UCL claims are predicated on allegedly fraudulent omissions by Apple, those claims are subject to the pleading requirements of Rule 9(b)."); *Herrington v. Johnson & Johnson Consumer Cos. Inc.*, No. C 09-1597 CW, 2010 WL 3448531, at *6 (N.D. Cal. Sept. 1, 2010) (holding that Rule 9(b) applied to plaintiffs' CLRA and UCL claims where "[t]he gravamen of their claims is that Defendants made affirmative misrepresentations or failed to disclose material facts about their children's bath products").

Rule 9(b) requires Plaintiffs to "state[] the time, place and specific content of the false representations as well as the identities of the parties to the misrepresentation." *In re Sony Gaming Networks*, 903 F. Supp. 2d at 953 (internal quotation marks and citation omitted); *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010) (plaintiff must allege "the who, what, when, where, and how of the misconduct charged"). Plaintiffs must also plead facts explaining why the statement was false when it was made. *Id.*

### b. Plaintiffs Do Not Plead Any Specific, Actionable Misrepresentations

Plaintiffs do not allege that they saw or heard *any* representations regarding the iOS, iMessage, or the Messages software at or before the time of purchase. While they claim that Apple "represented, through their advertising and other express representations, that iMessage had benefits or characteristics that they did not actually have" (Compl. ¶ 98; *see also id.* ¶ 100), Plaintiffs do not allege when, where, or how these alleged representations occurred; who made them; when or how they were exposed to them; or which ones they relied on and considered material to their purchase. *See Kearns*, 567 F.3d at 1126 (upholding dismissal of complaint because plaintiff did not allege the specific misrepresentations, who made them, when he was exposed to them, or which ones he relied on and found material).

In fact, in the entire 102-paragraph Complaint, Plaintiffs identify only two statements they attribute to Apple, neither of which is actionable. First, Plaintiffs purport to quote at length from a description of iMessage allegedly pulled from Apple's website. (*See* Compl. ¶ 17.) Plaintiffs, however, do not identify which, if any, portions of that description are false or misleading. Nor do any of the Plaintiffs claim to have read that description at any time, let alone at or before the time of purchase.

Second, Plaintiffs appear to allege that when a sender iPhone displays certain messages as "delivered," those delivery notifications are incorrect. Notably, only one of the Plaintiffs — Mrs. Backhaut — even has standing to assert this theory; neither Mr. Backhaut nor Mr. Morris claims to have received an inaccurate "delivered" notification. However, Mrs. Backhaut cannot claim that she relied on any delivery notification at or before the purchase of her iPhone or any non-Apple device (in fact, Mrs. Backhaut never alleges that she purchased any non-Apple device). Mrs. Backhaut alleges that she received an inaccurate "Delivered" notification "[f]ollowing Mr. Backhaut's switch to an Android based phone" in December 2013 — one year *after* she purchased her iPhone. (*Id.* ¶¶ 40-41, 43.) Because she could not have relied on this alleged misrepresentation in connection with her iPhone purchase, this alleged notification cannot form the basis for any claim under the UCL or CLRA.

### 3. Plaintiffs Do Not Plead Any Actionable Omission

Plaintiffs have not alleged any actionable omission in support of their CLRA or UCL claims. To be actionable, an omission must be "contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose." *Baltazar v. Apple, Inc.*, No. CV-10-3231-JF, 2011 WL 588209, at *4 (N.D. Cal. Feb. 10, 2011) (quoting *Daugherty v. Am. Honda Motor Co. Inc.*, 144 Cal. App. 4th 824, 835 (2006)); *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1141 (9th Cir. 2012) ("California courts have generally rejected a broad obligation to disclose . . . ."). Rule 9(b) applies with equal force to alleged omissions. *Kearns*, 567 F.3d at 1127 (because "nondisclosure is a claim for misrepresentation in a cause of action for fraud, it . . . must be pleaded with particularity under Rule 9(b)"). Plaintiffs have pled no omissions that satisfy these requirements.

#### a. No Representation in Need of Correction

As discussed above, Plaintiffs do not allege any specific misrepresentations by Apple and, thus, cannot point to any representation in need of correction. Even if Plaintiffs could identify a representation by Apple in need of correction, they do not point to any representation that *they* saw, heard, or reviewed. The law requires Plaintiffs to at least make this minimal showing. *In re Facebook PPC Adver. Litig.*, No. 09-3043-JF, 2010 WL 3341062, *10 (N.D. Cal. Aug. 25, 2010) ("Plaintiffs still should be able to identify with particularity at least the specific policies and representations that they reviewed." (citation omitted)).

#### b. No Obligation to Disclose

Plaintiffs can point to no other basis for requiring Apple to disclose facts regarding iMessage or Messages. "California courts have generally rejected a broad obligation to disclose." *Wilson*, 668 F.3d at 1141. As the Ninth Circuit has held, an obligation to disclose arises only when the alleged "defect" relates to a "safety issue." *Id*. Plaintiffs make absolutely no allegations about any safety issues they claim to have faced.

### 4. Plaintiffs Do Not Allege Reliance

#### a. Plaintiffs Cannot Have Relied on a Purported Misrepresentation They Are Unable to Identify

Plaintiffs must plead *actual* reliance on an allegedly deceptive or misleading statement as part of their UCL claim. *Kwikset v. Super. Ct.*, 51 Cal. 4th 310, 326 (2011). The CLRA similarly requires that a violation "cause[] or result[] in some sort of damage." *Meyer v. Spring Spectrum, L.P.*, 45 Cal. 4th 634, 641 (2009). Because they do not identify a misrepresentation, Plaintiffs cannot meet their pleading burden.

Plaintiffs do not allege a specific misrepresentation so, of course, they cannot allege that they saw, heard, or were somehow exposed to any specific misrepresentation. This deficiency, standing alone, is fatal to Plaintiffs' CLRA and UCL claims. *See Durell*, 183 Cal. App. 4th at 1363 ("The SAC does not allege Durell relied on either Sharp's Web site representations or on the language in the Agreement for Services . . . . Indeed, the SAC does not allege Durell ever visited Sharp's Web site or even that he ever read the Agreement for Services."); *Laster v. T-Mobile USA, Inc.*, 407 F. Supp. 2d 1181, 1194 (S.D. Cal. 2005), *aff'd*, 252 Fed. App'x 777 (2007) (dismissing UCL claim where "none of the named Plaintiffs allege that they saw, read, or in any way relied on the advertisements").

#### b. Conclusory Allegations of Reliance Are Insufficient

Plaintiffs make the conclusory allegation that they "suffered injury by paying more for iPhones than they would have if they had known they would not be able to stop using an iPhone in the future once their numbers were registered in iMessage." (Compl. ¶ 86.) But this bare assertion is not enough. "[M]ere assertions of reliance" have been repeatedly dismissed for failure to satisfy Rule 9(b). *Baltazar*, 2011 WL 588209, at *3 (dismissing CLRA and misrepresentation claims because "the mere assertion of 'reliance' is insufficient" and requiring plaintiffs to "allege the specifics of [their] reliance on the misrepresentation to show a bona fide claim of actual reliance") (citation omitted); *In re iPhone 4S Consumer Litig.*, No. C 12-1127 CW, 2013 WL 3829653, at *12-13 (N.D. Cal. July 23, 2013) (dismissing UCL and CLRA claims because plaintiffs did not "allege with specificity which commercials or other misleading

advertisements they each relied upon in purchasing their devices."); *Herrington*, 2010 WL 3448531, at *7, *11 (dismissing UCL, CLRA, and misrepresentation claims where plaintiffs pleaded neither "the circumstances in which they were exposed to these [allegedly false or misleading] statements" nor "upon which of these misrepresentations they relied in making their purchase").

### 5. Plaintiffs Do Not Otherwise State a Claim Under the "Unlawful" Prong of the UCL

An "unlawful" practice or act under the UCL is "anything that can properly be called a business practice and that at the same time is forbidden by law." *People v. McKale*, 25 Cal. 3d 626, 634 (1979) (citation omitted). The UCL thus "borrows" violations of other laws and treats them as unlawful practices that are independently actionable under the statute. *Farmers Ins. Exch. v. Superior Court*, 2 Cal. 4th 377, 383 (1992). Courts routinely dismiss UCL claims where the plaintiff has not established a predicate violation of underlying law. *See, e.g., Indep. Cellular Tel., Inc. v. Daniels & Assocs.*, 863 F. Supp. 1109, 1118 (N.D. Cal. 1994).

Plaintiffs base their claim under the "unlawful" prong of the UCL on a violation of the SCA and the Wiretap Act. As discussed above, Plaintiffs have not stated a viable predicate claim under either statute, and therefore cannot plead an "unlawful" act under the UCL. *Daugherty*, 144 Cal. App. 4th at 837-38 (dismissing UCL claim for lack of a violation of statute or other law); *Hodges v. Apple Inc.*, 13-CV-01128-WHO, 2013 WL 4393545, at *6 (N.D. Cal. Aug. 12, 2013) ("Because Hodges fails to plead with particularity how Apple violated any statute, he also fails to adequately plead a violation under the UCL's 'unlawful' prong.").

### 6. Plaintiffs Do Not Otherwise State a Claim Under the "Unfair" Prong of the UCL

Plaintiffs claim that Apple's alleged "interception and interment of SMS/MMS messages" and "deceptive notification of a delivered message, of former iMessage users" violate the "unfair" prong of the UCL. Although the UCL does not define the term "unfair," California courts have

1   developed at least two possible tests for "unfairness" within the meaning of the statute.[5]  *See*

2   *Herskowitz v. Apple Inc.*, 940 F. Supp. 2d 1131, 1145 (N.D. Cal. 2013).  Plaintiffs' allegations

3   satisfy neither.

4          Under the first test, Plaintiffs must allege that Apple's purported conduct violated a public

5   policy that is "tethered" to specific constitutional, regulatory, or statutory provisions.  *Id.* at 1145.

6   Courts require this "tethering" because "[c]ourts may not simply impose their own notions of the

7   day as to what is fair or unfair."  *Cel-Tech Communicatons, Inc. v. Los Angeles Cellular Tel. Co.*,

8   20 Cal. 4th 163, 182, 185 (1999).  Plaintiffs do not tether their "unfairness" claim to any specific

9   legal provision.  (*See* Compl. ¶ 78.)  Instead, they state generally that Apple's purported conduct

10  violates certain, unspecified "established law and/or public policies which seek to ensure the

11  privacy of electronic communications and full disclosure of unauthorized access to said

12  communications."  (*Id.*)  To the extent Plaintiffs rely upon their claims under the SCA and the

13  Wiretap Act, as discussed above, Plaintiffs cannot state a claim for any violation of these federal

14  privacy statutes.  Indeed, Apple's purported conduct falls squarely within statutory exemptions

15  from liability under the SCA and Wiretap Act.  Conduct exempted from liability by Congress

16  cannot form the basis of an "unfairness" claim under the UCL.  *See id.* at 1146 ("Because the

17  Court does not find that Herskowitz has sufficiently alleged violations based on

18  unconscionability, the Court similarly finds that Herskowitz has not alleged a violation that is

19  tethered to any statutory provision.").

20         The second test "examines whether the challenged business practice is 'immoral,

21  unethical, oppressive, unscrupulous or substantially injurious to consumers and requires the court

22  to weigh the utility of the defendant's conduct against the gravity of the harm to the alleged

23  victim."  *Herskowitz*, 940 F. Supp. 2d at 1145-46; *Drum v. San Fernando Valley Bar Ass'n*, 182

24  Cal. App. 4th 247, 257 (2010) (citation and internal quotation marks omitted).  Plaintiffs admit

25  that iMessage provides substantial ***benefits*** to consumers.  (*See, e.g.*, Compl. ¶¶ 9-11, 17.)  As

26

27         [5] As this Court noted in *Herskowitz*, the Ninth Circuit has rejected a third, multipronged
    test contained in the Federal Trade Commission Act as inapplicable in the consumer context.
28  *Herskowitz*, 940 F. Supp. 2d at 1146 n.6.

they acknowledge, iMessage is *free*. (*Id.*) It is ***unlimited***. (*Id.*) It works on multiple devices. (*Id.*) It allows users to send messages to multiple recipients at once. (*Id.*) It is integrated with Apple's Siri feature and can be operated using voice commands. (*Id.*) Plaintiffs concede that they voluntarily took advantage of these benefits when they were Apple users. (*Id.* ¶¶ 39, 47.) Plaintiffs cannot plausibly claim that Apple engaged in any countervailing "immoral, unethical, oppressive, unscrupulous or substantially injurious" conduct by not automatically recognizing that Plaintiffs switched to non-Apple devices. Plaintiffs made no effort to notify Apple of their switch to a new device, and they do not describe what efforts they undertook to "remove" their phone numbers from the 'iMessage system" after the fact. (*See id.* ¶¶ 45, 49.) To the extent Plaintiffs' claims of substantial injury are based on alleged misrepresentations or omissions, as discussed above, Plaintiffs have not pled any that are actionable, that they relied on, and that caused them injury.

### 7. Plaintiffs Do Not State a Claim Under California's Consumers Legal Remedies Act Based on the Messages Application

The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer[.]" Cal. Civ. Code § 1770(a). Courts have the power to determine, at the earliest stages of the litigation, whether, as a matter of law, a CLRA claim fails to state a cause of action. *See Freeman v. Wal-Mart Stores, Inc.*, 111 Cal. App. 4th 660, 668-69 (2003) (affirming demurrer with respect to CLRA claim).

Plaintiffs' CLRA claim is deficient as a matter of law. Software and software applications are not "goods" or "services" covered by the CLRA. *Ferrington v. McAfee, Inc.*, No. 10-CV-01455-LHK 2010 WL 3910169, at *14 (N.D. Cal. Oct. 5, 2010) (holding that "California law does not support Plaintiffs' contention that software is a tangible good or a service for purposes of the CLRA, and therefore the CLRA does not apply to the transactions at issue in this case"); *In re iPhone Application Litig.*, No. 11-MD-002250-LHK, 2011 WL 4403963, at *10 (N.D. Cal. Sept. 20, 2011) (concluding that software is neither a good nor a service within the meaning of the CLRA, and noting that "to the extent Plaintiffs' allegations are based solely on software,

Plaintiffs do not have a claim under the CLRA").[6]  Plaintiffs admit that iMessage worked through

its client software "***application***," Messages, and was a feature of Apple's iOS 5 software.  (*See,*

*e.g.*, Compl. ¶ 9.)  In *Wofford v. Apple Inc.*, No. 11-CV-0034 ABJ NLA, 2011 WL 5445054, at

*2 (S.D. Cal. Nov. 9, 2011), the court dismissed the plaintiffs' CLRA claim based on the same

iOS operating system at the core of Plaintiffs' claims here because Apple's operating system is

software not covered by the CLRA.  Plaintiffs' CLRA claim must be dismissed.

## V.     CONCLUSION

Apple respectfully requests that the Complaint be dismissed.

Dated: August 18, 2014

DAVID M. WALSH
TIFFANY CHEUNG
KAI S. BARTOLOMEO
MORRISON & FOERSTER LLP


By: */s/ David M. Walsh*
      DAVID M. WALSH

Attorneys for Defendant
APPLE INC.

---

[6] Courts interpreting the CLRA "have not expanded it beyond its express terms" and have narrowly construed the phrase "goods or services."  *See Berry v. Am. Exp. Publ'g, Inc.*, 147 Cal. App. 4th 224, 229, 232 (2007).