1
2
3
4
5
6
7

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| ADAM BACKHAUT, BOUAKHAY JOY BACKHAUT, AND KENNETH MORRIS, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED,<br><br>        Plaintiffs,<br><br>    v.<br><br>APPLE, INC.,<br><br>        Defendant. | Case No.: 14-CV-02285-LHK<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS |

        Plaintiffs Adam Backhaut, Bouakhay Joy Backhaut, and Kenneth Morris (collectively, "Plaintiffs") bring this Complaint, a putative class action on behalf of themselves and others similarly situated against Defendant Apple, Inc. ("Defendant") for violations of the Stored Communications Act, 18 U.S.C. § 2701; the Wiretap Act, 18 U.S.C. § 2510; California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200; and California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750. Compl., ECF. No. 1. The gravamen of Plaintiffs' Complaint is that Apple wrongfully intercepts, stores, and otherwise prevents former Apple device users from receiving text messages sent to them from current Apple device users. Before the Court is Defendant's motion to dismiss Plaintiffs' Complaint. ("MTD"), ECF No. 12. Plaintiff opposed the motion.  ("Opp."), ECF No. 16. Defendant replied. ("Reply"), ECF No. 17. Having considered the

submissions of the parties, the relevant law, and the record in this case, the Court hereby grants in part and denies in part Defendant's motion to dismiss for the reasons stated below.

## I.        BACKGROUND

### A.        Factual Allegations

Defendant Apple, Inc., a California corporation headquartered in Cupertino, California is the "designer and seller" of the iPhone and other mobile devices that run "Apple's proprietary mobile operating system." Compl. ¶¶ 7, 35. Apple's mobile operating system is known as "iOS" and its first iteration was released on June 29, 2007. *Id.* ¶ 7. On October 12, 2011, Apple released iOS 5, which included a "proprietary messaging service known as 'iMessage'" that runs on a client application called "Messages." *Id.* ¶¶ 8–9. The Backhaut Plaintiffs are residents of Michigan that purchased iPhones in December 2012. *Id.* ¶¶ 33, 39, 40. Plaintiff Morris is a resident of California and purchased his last iPhone in October 2012. *Id.* ¶¶ 34, 47. The Plaintiffs all used Apple's iMessage and Messages application on their iPhones. Two Plaintiffs, Adam Backhaut and Kenneth Morris, switched from Apple iPhones to non-Apple phones in December 2013 and December 2012 respectively. *Id.* ¶¶ 41, 47. Plaintiff Joy Backhaut continues to use iMessage and her iPhone.[1]

Plaintiffs allege that Apple continues to knowingly "intercept and access text messages sent to former iPhone/iMessage Users and prevent their delivery," in violation of the Stored Communications Act. *Id.* ¶ 64. In addition to this alleged "intercept[ion] and access," Plaintiffs contend that Apple wrongfully "receives and stores these messages through the employment of a . . . device under" the Wiretap Act. *Id.* ¶ 70. Plaintiffs further allege that these unlawful business practices support claims under California's Unfair Competition Law ("UCL"). Plaintiffs also allege "unfair" business practices and fraudulent conduct under the UCL. Finally, Plaintiffs contend Apple has made material misrepresentations and omissions to fraudulently induce consumers to purchase iPhones and iPads with the iMessage service, in violation of California's Consumers Legal Remedies Act ("CLRA"). *Id.* ¶¶ 88, 98–102.

**United States District Court**
For the Northern District of California

---

[1] As the Complaint refers to Bouakhay Joy Backhaut as "Joy Backhaut," the Court also does so.

Case No.: 14-CV-02285-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

### 1. Text Messages, iMessages, and Messages

"Text messages" or "texts" are "brief, electronic messages between two or more mobile devices." *Id.* ¶ 3. There are "multiple technologies" for sending text messages, but the "traditional" or standard technology is the Short Message Service and Multimedia Messaging Service ("SMS/MMS") protocols. *Id.* ¶¶ 3, 5. As an alternative to this standard protocol, Apple's proprietary text messages are known as "iMessages" and are sent using the "Messages" client application. *Id.* ¶¶ 8–10. Instead of the SMS/MMS protocol for sending and receiving messages, iMessages use Wi-Fi and cellular data networks to send messages and other content between two Apple devices. *Id.* ¶¶ 9–10.

"Once an iPhone user activates iMessage," the interface for sending iMessages and SMS/MMS text messages on the Messages client application is the same. *Id.* ¶ 11. The Messages application "automatically checks if the contact to whom the text message is being sent is also registered as an iMessage user." *Id.* ¶ 13. If the contact is registered as an iMessage user, the text message is sent as an iMessage, "bypassing the SMS/MMS system of the sender's cellular carrier." *Id.* If the contact is not registered as an iMessage user, the text message is sent as an SMS/MMS. *Id.* The Messages application "does not allow the user to select whether a text message will be sent using iMessage or SMS/MMS." *Id.* ¶ 12. However, a sender can see whether a message was sent using iMessage or SMS/MMS based on the background color of the message: blue for iMessage and green for SMS/MMS. *Id.* ¶ 14. When an iMessage is "received, the world 'delivered' will appear under the text message on the sender's phone." *Id.* ¶ 15.

### 2. Plaintiffs' Experiences

#### a. The Backhauts

In December 2012, the Backhauts purchased iPhone 5s in Michigan. *Id.* ¶ 39–40. "At the time of purchase," a Best Buy employee set up their iPhones, including iMessage. *Id.* In December 2013, Plaintiff Adam Backhaut purchased a "HTC One," a non-Apple mobile device that runs on an Android operating system. *Id.* ¶ 41. Following Adam Backhaut's switch, Plaintiff Joy Backhaut continued to send him text messages from her iPhone. *Id.* ¶ 43. On Joy Backhaut's phone, the word "delivered" appeared under her messages to her spouse, but Adam Backhaut never received those

Case No.: 14-CV-02285-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

*(left margin, rotated)* **United States District Court** For the Northern District of California

messages. *Id.* Upon realizing that he was not receiving certain text messages, Adam Backhaut "attempted to remove his phone number from the iMessage system but was unsuccessful." *Id.* ¶ 45. He continues to not receive messages from iPhone/iMessage users. *Id.* ¶ 45.

### b.    Kenneth Morris

Plaintiff Morris was an iPhone user from November 2007 to December 2012. *Id.* ¶ 46. He purchased his last iPhone, an iPhone 5, in October 2012. *Id.* ¶ 47. In December 2012, Plaintiff Morris purchased a non-Apple phone. *Id.* Morris also "attempted to remove his phone number from the iMessage system" but was unable to do so. *Id.* ¶ 49. Morris also asked his contacts to manually change the settings in their iPhones to send him SMS/MMS messages rather than iMessages. *Id.* This resolved the problem until Apple released iOS 7.1.1, at which point even contacts who had manually changed their settings had difficulties sending Morris text messages. *Id.* ¶ 50.

### B.    Procedural History

Plaintiffs filed this putative class action Complaint on May 16, 2014. ECF No. 1. Defendant filed its motion to dismiss on August 18, 2014. ECF No. 12. As part of its motion to dismiss, Defendant also filed a request for judicial notice, which Plaintiff did not oppose.[2] ECF No. 12. Plaintiffs filed their opposition on September 22, 2014. ECF No. 16. Defendant filed its reply on October 21, 2014. ECF No. 17.

## II.    LEGAL STANDARDS

### A.    Motion to Dismiss Under Rule 12(b)(6)

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss an action for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability

---

[2] The Court GRANTS Defendant's unopposed request for judicial notice of Apple's iOS 5, 5.1, 6, and 7 License Agreements and takes judicial notice of the adjudicative facts contained therein. The contents of these documents are necessarily implicated by Plaintiffs' Complaint and neither party contests the authenticity of the documents. *See* Fed. R. Evid. 201; *Rubio v. Capitol One Bank*, 613 F.3d 1195, 1199 (9th Cir. 2010); *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds, Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

4

1    requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."

2    *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). For purposes of ruling on a

3    Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and

4    construe[s] the pleadings in the light most favorable to the non-moving party." *Manzarek v. St.*

5    *Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

6        Nonetheless, the Court need not accept as true allegations contradicted by judicially

7    noticeable facts, and the "[C]ourt may look beyond the plaintiff's complaint to matters of public

8    record" without converting the Rule 12(b)(6) motion into one for summary judgment. *Shaw v.*

9    *Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir.), *cert. denied*, 516 U.S. 964 (1995); *see Van Buskirk v.*

10   *Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002); *Schwarz v. United States*, 234 F.3d

11   428, 435 (9th Cir. 2000). Nor is the Court required to "'assume the truth of legal conclusions

12   merely because they are cast in the form of factual allegations.'" *Fayer v. Vaughn*, 649 F.3d 1061,

13   1064 (9th Cir. 2011) (quoting *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)). Mere

14   "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to

15   dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004) (internal quotation marks and

16   citations omitted); *accord Iqbal*, 556 U.S. at 663–64. Furthermore, "a plaintiff may plead herself

17   out of court" if she "plead[s] facts which establish that [s]he cannot prevail on h[er] ... claim."

18   *Weisbuch v. Cnty. of L.A.*, 119 F.3d 778, 783 n.1 (9th Cir. 1997) (internal quotation marks and

19   citation omitted).

20       **B.      Rule 9(b) Pleading Requirements**

21       Claims sounding in fraud or mistake are subject to the heightened pleading requirements of

22   Federal Rule of Civil Procedure 9(b), which requires that a plaintiff alleging fraud "must state with

23   particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *see Kearns v. Ford Motor*

24   *Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009). To satisfy the heightened standard under Rule 9(b), the

25   allegations must be "specific enough to give defendants notice of the particular misconduct which

26   is alleged to constitute the fraud charged so that they can defend against the charge and not just

27   deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir.

28   1985). Thus, claims sounding in fraud must allege "an account of the 'time, place, and specific

5

content of the false representations as well as the identities of the parties to the

misrepresentations.'" *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (per curiam). The

plaintiff must set forth "what is false or misleading about a statement, and why it is false." *In re*

*Glenfed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc), *superseded by statute on*

*other grounds as stated in Ronconi v. Larkin*, 253 F.3d 423, 429 n.6 (9th Cir. 2001).

### C.    Leave to Amend

If the Court determines that the complaint should be dismissed, it must then decide whether

to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend

"shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule

15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v.*

*Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks and alterations

omitted). When dismissing a complaint for failure to state a claim, "'a district court should grant

leave to amend even if no request to amend the pleading was made, unless it determines that the

pleading could not possibly be cured by the allegation of other facts.'" *Id.* at 1130 (quoting *Doe v.*

*United States*, 58 F.3d 494, 497 (9th Cir. 1995) (internal quotation marks omitted)). Accordingly,

leave to amend generally shall be denied only if allowing amendment would unduly prejudice the

opposing party, cause undue delay, or be futile, or if the moving party has acted in bad faith.

*Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

### III.    DISCUSSION

Plaintiffs allege violations of the Stored Communications Act ("SCA"), 18 U.S.C. § 2701;

the Wiretap Act, 18 U.S.C. § 2511; California's Unfair Competition Law ("UCL"), Cal. Bus. &

Prof. Code § 17200; and California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code

§ 1750. Defendant seeks to dismiss Plaintiffs' complaint on a number of grounds, including that

Plaintiff cannot assert a claim under the SCA or the Wiretap Act; Apple's actions fall within the

good faith exception to both federal Acts; Plaintiffs lack standing under the UCL and CLRA;

Plaintiffs' UCL and CLRA allegations do not satisfy Rule 9(b)'s heightened pleading standard; and

Plaintiffs have otherwise failed to adequately plead claims under the UCL and CLRA. The Court

addresses these arguments below.

Case No.: 14-CV-02285-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

**United States District Court**
For the Northern District of California

**A.     SCA Claim**

Plaintiffs allege that Apple "knowingly, intentionally, and willfully accessed electronic communications in the wireless accounts of Plaintiffs" in violation of the SCA. Defendant argues that Plaintiffs have failed to allege that Apple accessed a cognizable "facility," that Plaintiffs consented to any access, and that Apple's actions fall within the good faith statutory exception to liability. The Court begins by turning to whether Plaintiffs have adequately stated an SCA claim.

Enacted in 1986 as Section II of the Electronic Communications Protection Act ("ECPA"), the SCA creates criminal and civil liability for certain unauthorized access to wire and electronic communications and records in temporary and backup storage. *See Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 874 (9th Cir. 2002). The SCA creates a private right of action where a person (1) "intentionally accesses" (2) "a facility through which an electronic communication service is provided" (3) "without authorization" or by "exceed[ing] an authorization" given and (4) thereby "obtains . . . a wire or electronic communication" (5) while that wire or electronic communication is in "electronic storage." 18 U.S.C. § 2701(a); *see id.* § 2707 (creating a private right of action). While the statute does not define "facility," it does define "electronic communication service" and "electronic storage." An "electronic communication service," is "any service which provides to users thereof the ability to send or receive wire or electronic communications." *Id.* § 2510(15) (incorporated by reference in *id.* § 2711(1) of the SCA). "Electronic storage" is defined as "(A) any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof; and (B) any storage of such communication by an electronic communication service for purposes of backup protection of such communication." *Id.* § 2510(7)

Turning to Plaintiffs' SCA claim, the Court finds that Plaintiffs have failed to adequately allege facts supporting a cause of action under the SCA. Plaintiffs do not allege that Apple accessed a "facility through which an electronic communication service is provided" while the communication was in "electronic storage." *See* 18 U.S.C. § 2701(a). The Complaint alleges that Apple "accesses and intercepts" text messages sent by current iPhone/iMessage users to former Apple device users, however, there are no allegations that Apple accesses the messages while they are in "electronic storage," or that Apple accesses a "facility through which an electronic

7

**United States District Court**
For the Northern District of California

communication service is provided." *See* Compl. ¶¶ 62–66. Plaintiffs do not allege that iMessages sent by current Apple device users are stored in temporary or backup storage. *See* § 2510(7). Moreover, Plaintiffs concede that under § 2701(a), their mobile devices cannot be "facilities" and that any "facilities" must be operated by a third-party. *See* Opp. 7–8; MTD at 6–7 (citing *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1057 (N.D. Cal. 2012); *Garcia v. City of Laredo*, 702 F.3d 788, 792–93 (5th Cir. 2012)). On its face, the Complaint does not allege that Apple accesses the facilities of a third party to obtain Plaintiffs' electronic communications, while the communications are in temporary or backup storage.

In opposition, Plaintiffs contend that because "the iMessage system necessarily relies on an underlying Wi-Fi and wireless data connection in order to send and receive messages," Apple wrongfully accesses those facilities without authorization. Opp. at 6–7. According to Plaintiffs, when a current iMessage/iPhone user sends an iMessage to a former Apple device user, Apple "intercept[s the iMessage] from the underlying Wi-Fi or wireless data connection . . . ." Opp. at 7. Even assuming this theory is properly alleged in the Complaint, these allegations confuse the scope of the SCA with the scope of the Wiretap Act. In support of their SCA claim, Plaintiffs repeatedly argue that Apple has "intercepted" text messages, and Plaintiffs cite cases discussing the "capture or redirect[ion]" of electronic communications. *See* Opp. at 7 (citing *United States v. Rodriguez*, 968 F.2d 130, 136 (2d Cir. 1992) (discussing interception under the Wiretap Act), and *Konop*, 302 F.3d at 878 (distinguishing interception of communications from access to stored communications)). However, the SCA protects *stored* communications, whether in temporary or backup storage, not contemporaneous communications in transit from sender to recipient. *See* *Konop*, 302 F.3d at 878–79. The interception of contemporaneous communications falls within the purview of the Wiretap Act. As discussed above, Plaintiffs have failed to allege that Apple accesses third-party facilities and thereby "obtains, alters, or prevents authorized access" to communications in "electronic storage." *See* 18 U.S.C. § 2701(a).

As Plaintiffs have not alleged the core elements of a SCA claim, the Court grants Defendant's motion to dismiss the SCA claim. The Court finds that amendment would not necessarily be futile, and therefore dismisses Plaintiffs' SCA claim with leave to amend. *See*

8

*Lopez*, 203 F.3d at 1127. In light of this finding, the Court declines to reach Defendant's alternative arguments for dismissing Plaintiffs' SCA claim.

### B.   Wiretap Act Claim

As discussed previously, Plaintiffs also allege that Defendant intentionally intercepted text messages sent by current iPhone/iMessage users in violation of the Wiretap Act. Defendant contends that Plaintiffs have failed to allege an actionable "interception"; Apple's actions fall within the "ordinary course of business exception"; Plaintiffs have failed to allege intent; Plaintiffs consented to Apple's interceptions; and Apple's actions fall within the good faith statutory exception to liability. The Court addresses each argument in turn.

Unlike the SCA, which protects stored communications, the Wiretap Act protects communications in transit. The Wiretap Act, which was enacted as Title III of ECPA, generally prohibits the "interception" of "wire, oral, or electronic communications." 18 U.S.C. § 2511(1). More specifically, the Wiretap Act provides a private right of action against any person who "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication." 18 U.S.C. § 2511(1)(a); *see id.* § 2520 (providing a private right of action). The statute defines "intercept" as "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." *Id.* § 2510(4). "Such acquisition occurs 'when the contents of a wire communication are captured or redirected in any way.'" *Noel v. Hall*, 568 F.3d 743, 749 (9th Cir. 2009).

First, the Court turns to whether Plaintiffs have alleged an actionable "interception" under the Wiretap Act. Apple argues that because Plaintiffs have alleged that current iPhone/iMessage users are using the Messages application to send messages and Apple merely "relays electronic communications over its own systems," there is no "interception" under the Wiretap Act. However, Plaintiffs allege that Apple is wrongfully intercepting and misdirecting text messages from current to former Apple device users. Moreover, Plaintiffs allege that "[u]pon information and belief, Apple receives and stores these messages through the employment of a mechanical or electrical tool or apparatus that is considered a device under 18 U.S.C. § 2511." Compl. ¶ 70. The fact that

9

**United States District Court**
For the Northern District of California

Apple provides an electronic communications service does not preclude Plaintiffs' allegation that Apple also uses a "device" under § 2511 to intercept messages on its own systems. *See, e.g.*, *In re Google Inc. Gmail Litig.*, No. 13-MD-2430-LHK, 2013 WL 5423918, at *8 (N.D. Cal. Sept. 26, 2013) ("Plaintiffs allege that there are separate devices—aside from the devices related to delivery of email—that intercept users' emails."). Defendant's reliance on *Ideal Aerosmith, Inc. v. Acutronic USA, Inc.*, No. 07-1029, 2007 WL 4394447, at *5 (E.D. Pa. Dec. 13, 2007), is misplaced. In *Ideal Aerosmith*, the defendant was the intended *recipient* of an electronic communication, which was why the server or drive on which the communication was received could not be a "device" under § 2511. *See also Crowley v. CyberSource Corp.*, 166 F. Supp. 2d 1263, 1269 (N.D. Cal. 2001) (same). Here, in contrast, Plaintiffs specifically allege that Apple is intercepting and preventing the delivery of messages that are not addressed or directed to Apple, and that Apple does so by means of a "device" under § 2511.

Second, Defendant further contends that any "device" Plaintiffs identify would fall within the "ordinary course of business" exception under the Wiretap Act. Section 2510(5)(a), the definition of "device," exempts "any telephone or telegraph instrument, equipment or facility, or any component thereof . . . being used by a provider of wire or electronic communication service in the ordinary course of its business . . . ." This exception is narrow in scope and requires that the electronic communication service provider demonstrate that "the interception facilitated the communication service or was incidental to the functioning of the provided communication service." *In re Google Inc. Gmail Litig.*, 2013 WL 5423918, at *8. Defendant argues that insofar as the Messages application "intercepts" text messages sent by Apple device users to former Apple device users, it is "necessarily an integral part of the transmission of the message." MTD at 10. While that might be the case where iMessages are being successfully transmitted between two Apple device users, Plaintiffs have alleged that Apple is wrongfully intercepting messages sent to former Apple device users, such that "transmission of the message" never occurs.

In the instant case, Plaintiffs have sufficiently alleged that Apple's interception of messages to former Apple device users, e.g., the automatic categorization of messages as iMessages rather than SMS/MMS messages, neither facilitates nor is incidental to the transmission of an electronic

10

communication. *See* Compl. ¶¶ 13, 19, 20. Plaintiffs allege that the Messages application

"automatically checks" if the designated recipient is registered as an iMessage user and, if so

registered, sends the message as an iMessage. *Id.* ¶ 13. The Messages application does not allow

the sender to specify whether a message is sent as an iMessage or via SMS/MMS. *Id.* Plaintiffs

further allege that "[w]hen a current iPhone/iMessage User sends a text message to the former

iPhone/iMessage User, Apple intercepts that text message and diverts it from the standard

SMS/MMS protocols to Apple's iMessage system," ensuring its nondelivery. *Id.* ¶ 5. Defendant's

claim that its interception is "necessary" to facilitate transmission of messages rings hollow when

the interception actually renders messages undeliverable. Plaintiffs' allegations are sufficient to

demonstrate a plausible SCA claim.[3]

Third, the Court finds that Plaintiffs have sufficiently alleged intent under § 2511(1)(a).

Under the Wiretap Act, a defendant must have acted "intentionally" to trigger civil or criminal

liability. Interceptions that are the product of inadvertence or mistake are insufficient to support

liability. *See, e.g.*, *In re Pharmatrak, Inc. Privacy Litig.*, 329 F.3d 9, 35 (1st Cir. 2003). Plaintiffs

allege that "Apple intentionally intercepted the electronic communications of Plaintiffs and the

proposed class." Compl. ¶ 68. In support of this allegation, Plaintiffs further plead that "Apple has

been aware of this issue as early as January 5, 2012," and that Apple's interceptions are intentional

because "Apple has been notified of the problem but failed to remedy it." *Id.* ¶¶ 24, 71. Defendant

asserts that Plaintiffs have failed to allege that Apple's "conscious objective"[4] was to intercept their

---

[3] Defendant also cites *Hall v. Earthlink Network, Inc.*, 396 F.3d 500, 502 (2d Cir. 2005), in support
of its contention that any interception would fall within the "ordinary course of business"
exception. In *Hall*, the plaintiff alleged Earthlink had wrongfully intercepted emails sent to his
cancelled email address because Earthlink had stored those emails rather than "bouncing back" the
emails to the senders. *Hall* had proceeded to the summary judgment stage, and Earthlink offered
evidence that it lacked the technical ability to "bounce back" emails and that storing such emails
was an ordinary business practice. *Id.* The *Hall* plaintiff offered no evidence to the contrary, and
the Second Circuit affirmed the district court's grant of summary judgment. *Id.* In addition to the
differing procedural posture of this case, Defendant has offered no evidence that it lacks the ability
to unregister Plaintiffs from its iMessage registry or otherwise prevent the automatic interception
of messages.
[4] The Court notes that Defendant's selective quotation of the legislative history omits the Senate
Report's further adoption of language from a prior Judiciary Committee Report that "[t]he term
'intentional' is not meant to connote the existence of a motive. Liability for intentionally engaging
in prohibited conduct is not dependent on an assessment of the merit of the motive that led the
person to disregard the law." S. Rep. 99-541, at 23–24 (1986). Plaintiffs need not allege that Apple
had an improper motive, only that Apple intentionally intercepted their messages.

Case No.: 14-CV-02285-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

**United States District Court**
For the Northern District of California

text messages, and that instead Plaintiffs only "suggest that Apple mistakenly treated former Apple users as iMessageable when they no longer were." MTD at 12. However, Plaintiffs' allegations belie any "suggestion" of mistake. Plaintiffs explicitly allege that Apple has knowingly continued to intentionally intercept their text messages. Plaintiffs further allege that Apple has even charged consumers $19 to "fix" the problem. Compl. ¶ 32. Defendant cites *Sanders v. Robert Bosch Corp.*, 38 F.3d 736, 742–43 (4th Cir. 1994), but that case offers little guidance here. Unlike in *Sanders*, where the interception was caused by an *unknown* design defect of a microphone, here Plaintiffs allege Apple's knowledge of the defect. In the instant case, Plaintiffs have alleged sufficient facts foreclosing the possibility that Apple's actions were the product of inadvertence or mistake. *See, e.g.*, *Anderson v. City of Columbus*, 374 F. Supp. 2d 1240, 1247 (M.D. Ga. 2005).

Moreover, the fact that Apple "publicly advised users" to turn off iMessage before switching to a non-Apple device does not, as a matter of law, defeat Plaintiffs' allegations that Apple acted intentionally. MTD at 12. Plaintiffs contend that they attempted to remove their phone numbers from the iMessage registry but still continued to have their text messages intercepted and redirected. *Id.* ¶¶ 45, 49. That Apple "publicly advised users" to undertake an allegedly ineffective solution is insufficient to show that Apple could not have intentionally intercepted Plaintiffs' communications. At best, Apple is contesting the truth of Plaintiffs' allegations. However, Plaintiffs have alleged that Apple knowingly, intentionally, and deliberately intercepted text messages. *See id.* On a motion to dismiss, these allegations are sufficient.

Fourth, Defendant argues that Plaintiffs and the senders of the iMessages have consented to any "interception." Under the Wiretap Act, it is not unlawful "to intercept a wire, oral, or electronic communication . . . where one of the parties to the communication has given prior consent to such interception." 18 U.S.C. § 2511(2)(d). Consent to an interception can be explicit or implied, but any consent must be actual. *See U.S. v. Van Poyck*, 77 F.3d 285, 292 (9th Cir. 1996); *U.S. v. Amen*, 831 F.2d 373, 378 (2d Cir. 1987); *U.S. v. Corona–Chavez*, 328 F.3d 974, 978 (8th Cir. 2003). Moreover, consent is not an all-or-nothing proposition. Rather, "[a] party may consent to the interception of only part of a communication or to the interception of only a subset of its communications." *In re Pharmatrack, Inc.*, 329 F.3d at 19.

Apple points to the terms of Apple's iOS software license agreement as evidence that current iPhone and iMessage users consent to Apple's interception of their text messages. Users must agree to these terms when they first download or use the iOS software that includes the iMessage and Messages application. *See* Declaration of Andre Boule in support of Defendant Apple Inc.'s motion to dismiss ("Boule Decl."), ECF No. 12, ¶ 3. The license agreement provides, in relevant part:

> In order to set up iMessage, and to initiate and receive iMessages between you and other iOS Device users, certain unique identifiers for your iOS Device and account are needed. These unique identifiers may include your email address(es), the Apple ID information you provide, a hardware identifier for your iOS Device, and your iPhone's telephone number. By using the iOS Software, you agree that Apple may transmit, collect, maintain, process and use these identifiers for the purpose of providing and improving the iMessage service. The iMessage service requires a Wi-Fi or cellular data connection. **To facilitate delivery of your iMessages and to enable you to maintain conversations across your devices, Apple may hold your iMessages in encrypted form for a limited period of time**. If your message cannot be sent as an iMessage, your message may be sent as an SMS or MMS message, for which carrier messaging rates may apply. . . . You may turn off the iMessage service by going to the Messages setting on your iOS Device.

Boule Decl. Exh. A, ¶ 4(e) (emphasis added).[5] Apple is correct that the consent of one of the parties to the communication, here the sender, would be sufficient to preclude liability under the Wiretap Act. *See* 18 U.S.C. § 2511(2)(d). Apple does not claim that former Apple device users have consented to Apple's continued interception. *See* MTD at 8, 13. The Court therefore addresses whether current iPhone/iMessage users, like Plaintiff Joy Backhaut, have consented to Apple's "interception" of text messages intended for former Apple users.

Apple relies solely on the bolded language in the iOS license agreement in arguing that current Apple device users have consented to its interception. However, the license agreement only informs users that Apple "may hold your iMessages in encrypted form for a limited period of time" "[t]o facilitate delivery of your iMessages . . . ." Boule Decl. Exh A, ¶ 4(e). While users may consent to Apple's "interception" of iMessages for the purpose of "facilitating delivery," Plaintiffs

---

[5] Apple attaches software license agreements for iOS 5, iOS 5.1, iOS 6, and iOS 7. *See* Boule Decl., Exhs. A–D. The relevant language regarding iMessages is the same across all of the license agreements.

Case No.: 14-CV-02285-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

United States District Court
For the Northern District of California

argue that Apple exceeds the scope of that consent when it intercepts messages in such a way that ensures delivery is impossible. Plaintiffs allege that Apple intercepts text messages addressed to former Apple device users immediately after users send them. Compl. ¶ 69. Apple then "miscategorizes" these "received and stored" messages as iMessages rather than SMS/MMS messages, ensuring that the messages cannot be delivered to former Apple device users. *Id.* ¶¶ 13, 19, 20, 70; Opp. at 9–10.

In light of the specific language of the license agreement, the Court concludes that a reasonable iMessage user would not be adequately notified that Apple would intercept his or her messages when doing so would not "facilitate delivery" of the messages. *Compare In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1028–29 (N.D. Cal. 2014) (explicit language of terms of service provided adequate notice to reasonable user), *with In re Google Inc. Gmail Litig.*, 2013 WL 5423918, at *11–14 (reasonable user "would not have necessarily understood" policy to encompass additional interceptions and uses of communications). Consent is "not an all-or-nothing proposition." *In re Google Inc. Gmail Litig.*, 2014 WL 5423918, at *12. Apple may be correct that current Apple device users consent to the interception of their messages for the purpose of "facilitating" their delivery, however, it is less clear that users consent to interception where such interception would guarantee nondelivery. Taken as a whole, a reasonable user could conclude that Apple intercepts messages sent as iMessages to other iMessage users, but that no such interception occurs if the text message cannot be sent as an iMessage. *See, e.g.*, *In re Pharmatrack, Inc.*, 329 F.3d at 19 (A party may consent to the interception of only part of a communication or to the interception of only a subset of its communications."). As such, the Court denies Defendant's motion to dismiss the Wiretap Act claim on the basis of consent.

Fifth, Defendant argues that the good faith defense exception under both the Wiretap Act and the SCA bars Plaintiffs' claims. As the exception is nearly identical under both the Wiretap Act and the SCA,[6] the Court addresses the defense as applied to both causes of action. Section 2520(d) of the Wiretap Act provides:

---

[6] The only difference is that 18 U.S.C. § 2707(e)(3) reads "a good faith determination that section 2511(3) of this title permitted the conduct complained of . . . ."

14

A good faith reliance on--
(1) a court warrant or order, a grand jury subpoena, a legislative authorization, or a statutory authorization;
(2) a request of an investigative or law enforcement officer under section 2518(7) of this title; or
(3) a good faith determination that section 2511(3) or 2511(2)(i) of this title permitted the conduct complained of;
is a complete defense against any civil or criminal action brought under this chapter or any other law.

18 U.S.C. § 2520(d) (emphasis added); *see also* 18 U.S.C. § 2707(e). Apple argues that because it relied on the exceptions to liability under the SCA and the Wiretap Act, e.g., consent and authorization, its actions fall under § 2520(d)(1) and § 2707(e)(1) as a good faith reliance on "a statutory authorization." However, Apple cites no authority for the proposition that the "statutory authorization" in § 2520(d)(1) and § 2707(e)(1) include authorizations in the Wiretap Act and the SCA. Apple cites *Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1180–81 (9th Cir. 2013), but that case addressed a defendant's good faith reliance on subpoenas and did not address whether a defendant's reliance on other provisions of the SCA and the Wiretap Act could support the good faith reliance defense.

Moreover, the statute itself contravenes Apple's argument. Section 2520(d)(3) and § 2707(e)(3) specifically provide that a good faith reliance on "a good faith determination that" specified exemptions to liability of the Wiretap Act and the SCA "permitted the conduct complained of . . . is a complete defense . . . ." Congress specifically provided a good faith defense for a defendant's determination that its conduct was permitted under §§ 2511(3), 2511(2) in Wiretap Act cases and § 2511(3) in SCA cases. Notably absent from these specified provisions are the sections of the statute that Apple alleges it relied on in determining its conduct was permitted. To the extent Apple contends that Congress intended to allow a good faith defense in reliance on any provision of the SCA and the Wiretap Act, despite the explicit language of § 2520(d)(3) and § 2707(e)(3), that argument is unavailing.

The Court therefore denies Defendant's motion to dismiss Plaintiffs' Wiretap Act claim. Plaintiffs have sufficiently alleged a viable cause of action under the Wiretap Act for Defendant's intentional interception of text messages from current to former Apple device users.

15

### C.     CLRA and UCL Claims

Plaintiffs allege violations of both California's Unfair Competition Law and Consumers Legal Remedies Act. For their CLRA claim, Plaintiffs allege that they relied on Apple's misrepresentations regarding iMessages in purchasing their Apple devices. As to the UCL, Plaintiffs allege violations under all three prongs: unlawful, unfair, and fraudulent business practices. Defendant raises the following arguments: Plaintiffs lack standing under the CLRA and UCL; Plaintiffs' fraud-based claims do not satisfy Rule 9(b)'s heightened pleading standard; Plaintiffs fail to plead an actionable omission; Plaintiffs fail to allege reliance; Plaintiffs do not state a claim under the "unlawful" or "unfair" prong of the UCL; and Plaintiffs' CLRA claim is deficient as a matter of law. The Court begins with the question of standing under the CLRA and UCL.

### 1.     Standing under the CLRA and UCL

Defendant contends that Plaintiffs' allegations are insufficient to meet the particularized standing requirements of the CLRA and UCL. More specifically, Defendant argues that Plaintiffs have failed to plead actual reliance as required to establish standing for their CLRA claim and UCL claims based on fraudulent conduct or misrepresentations and omissions.

A plaintiff may bring a claim under the CLRA so long as she "suffer[ed] any damage as a result of" a proscribed practice under the CLRA. Cal. Civ. Code § 1780(a). This means that to adequately plead a CLRA claim, a plaintiff must allege that she relied on the defendant's alleged misrepresentation and that she suffered economic injury as a result. *Durell v. Sharp Healthcare*, 108 Cal. Rptr. 3d 682, 697 (Cal. Ct. App. 2010). Similarly, under the UCL, a plaintiff must demonstrate that she "suffered injury in fact and . . . lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204.[7] Interpreting this statutory language, California courts have held that when the "unfair competition" underlying a plaintiff's UCL claim consists of a defendant's misrepresentation or omission, a plaintiff must have actually relied on the misrepresentation or omission, and suffered economic injury as a result of that reliance, to have standing to sue. *See In re Tobacco II Cases*, 46 Cal. 4th 298, 326 (Cal. 2009). California courts

---

[7] A plaintiff who has standing under the UCL's "lost money or property" requirement will have suffered the requisite "damage" for purposes of establishing CLRA standing. *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1108 (9th Cir. 2013).

Case No.: 14-CV-02285-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

United States District Court
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

have subsequently extended the actual reliance requirement to claims brought under the UCL's unlawful prong to the extent "the predicate unlawful conduct is based on misrepresentations." *Durell*, 108 Cal. Rptr. 3d at 687–88; *accord Kwikset Corp. v. Superior Court*, 246 P.3d 877, 888 (Cal. 2011).

Moreover, in *Kwikset Corp. v. Superior Court*, the California Supreme Court suggested that the actual reliance requirement applies whenever the underlying misconduct in a UCL action is fraudulent conduct. *See Kwikset*, 246 P.3d at 888. In line with this authority, this Court has concluded "that the actual reliance requirement also applies to claims under the UCL's unfair prong to the extent such claims are based on fraudulent conduct." *See Kane v. Chobani, Inc.*, No. 12–2425, 2013 WL 5289253, at *6 (N.D. Cal. Sept. 19, 2013). Accordingly, the Court has consistently required allegations of actual reliance and injury at the pleading stage for claims under all three prongs of the UCL where such claims are premised on misrepresentations. *See Kane v. Chobani, Inc.*, No. 12–2425, 2014 WL 657300, at *5 (N.D. Cal. Feb. 20, 2014).

Here, other than the UCL claims based on alleged violations of the SCA and the Wiretap Act, Plaintiffs' CLRA claim and UCL claims are based on alleged misrepresentations, omissions, and fraudulent conduct by Apple. As discussed above, those claims are therefore subject to the actual reliance requirement. *See, e.g.*, *Kane*, 2014 WL 657300, at *5. Plaintiffs allege two theories of injury: (1) that they paid for "Android phones that do not fully function as a result of Apple's continued unauthorized registration and use of their phone numbers" and (2) that Plaintiffs paid more "for iPhones than they would have if they had known they would not be able to stop using an iPhone in the future once their numbers were registered in iMessage." Compl. ¶¶ 85–86. As an initial matter, Defendant is correct that Plaintiffs fail to allege any facts supporting their first theory of injury. Other than the single assertion of injury in paragraph 85, the Complaint does not allege any facts supporting Plaintiffs' claim that Apple's actions affect the actual functionality of their Android devices. Moreover, Plaintiffs fail to allege that they purchased their Android phones in reliance on any misrepresentation or omission by Apple. As a result, Plaintiffs' first theory of injury is insufficient to satisfy standing under the CLRA and UCL.

Case No.: 14-CV-02285-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

1    Plaintiffs' second theory of injury also suffers from the same defect. Under both the CLRA

2    and UCL, Plaintiffs must allege that they suffered an economic injury,[8] e.g., that they "lost money

3    or property" as a result of relying on Apple's misrepresentations or omissions. *See Durell*, 108 Cal.

4    Rptr. 3d at 697; *In re Tobacco II Cases*, 46 Cal. 4th at 326; Cal. Bus. & Prof. Code § 17204. In the

5    instant case, Plaintiffs have alleged that they "lost money" by overpaying for their Apple devices.

6    However, Plaintiffs have failed to allege that they overpaid for their Apple devices in reliance on

7    misrepresentations, omissions, or other wrongful conduct by Apple. *See, e.g.*, *Birdsong v. Apple,*

8    *Inc.*, No. 06-02280, 2008 WL 7359917, at *6 (N.D. Cal. June 13, 2008) ("A showing of reliance on

9    a false or misleading representation is required to support a UCL claim based on the theory that a

10   plaintiff was deprived of the 'benefit of the bargain,' i.e., that the plaintiff would not have

11   purchased a product or would have paid less money for it had the representation not been made.").

12   Nowhere in the Complaint do Plaintiffs allege that they saw, read, or relied on any representations

13   by Apple regarding iMessage or the Messages application prior to purchasing their Apple devices.

14   As such the Court finds that Plaintiffs have failed to adequately plead actual reliance as required to

15   establish standing under the CLRA and UCL.

16   In opposition, Plaintiffs assert that the Complaint sufficiently alleges actual reliance on a

17   material omission by Apple. Opp. at 22–24. More specifically, Plaintiffs contend that Apple had a

18   duty to disclose that Apple device users would be unable to receive certain text messages if they

19   switched to a non-Apple device, and that they would not have paid as much for their phones had

20   Apple fully disclosed. To state a UCL claim based on an omission, the omission must either be

21   "contrary to a representation actually made by the defendant, or an omission of a fact the defendant

22   was obliged to disclose." *Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913, 925 (N.D. Cal. 2012)

23   (quoting *Baltazar v. Apple, Inc.*, No. 10-3231, 2011 WL 588209, at *4 (N.D. Cal. Feb. 10, 2011)).

24   Plaintiffs contend that Apple was obligated to disclose this "defect" because Apple had "exclusive

25   knowledge" of the issue and "actively concealed" the problem. *See Collins v. eMachines, Inc.*, 134

26

27   _____

[8] Plaintiffs cite *Fireside Bank v. Superior Court*, 40 Cal. 4th 1069 (2007), for their claim that "an out of pocket payment of funds is *not* a prerequisite to a claim for injunctive or declaratory relief." Opp. at 19. The *Fireside Bank* Court did not address standing under the UCL or CLRA and neither the claims nor factual allegations of that case bear any relation to the issues at stake here.

28

18

Case No.: 14-CV-02285-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

United States District Court
For the Northern District of California

1  Cal. Rptr. 3d 588, 593 (Cal. Ct. App. 2011). However, even assuming that the factors triggering a

2  duty to disclose applied in *Collins* apply here, a proposition Defendant contests,[9] Plaintiffs have not

3  alleged that Apple had "exclusive knowledge of material facts not known or reasonably accessible

4  to" Plaintiffs. *Id.* Plaintiffs allege that Apple "has been aware of this issue as early as January 5,

5  2012," based on a CNET News article published on that date. Compl. ¶¶ 24–25. Plaintiffs do not

6  allege that Apple was aware of the issue prior to consumer complaints and inquiries. The CNET

7  News article was published nearly a year before the Backhaut Plaintiffs purchased their iPhones

8  and nine months prior to Plaintiff Morris's purchase of his iPhone. Plaintiffs have not only failed to

9  affirmatively allege Apple's "exclusive knowledge" and Plaintiffs' inability to reasonably access

10 this information, Plaintiffs appear to have pled facts suggesting the opposite. Under these

11 circumstances, the Court concludes Plaintiffs have not sufficiently alleged actual reliance on a

12 material omission.

13         The Court therefore grants Defendant's motion to dismiss Plaintiffs' CLRA claim and the

14 UCL claims based on Apple's alleged misrepresentations, omissions, and fraudulent conduct. This

15 dismissal is without prejudice as the Court concludes that amendment would not necessarily be

16 futile. *See Lopez*, 203 F.3d at 1130; *Leadsinger*, 512 F.3d at 532. The Court declines to reach

17 Defendant's other arguments regarding Plaintiffs' CLRA claim and UCL claims based on

18 misrepresentations, omissions, or fraudulent conduct.

19

20

21

22

_____

23 [9] The California Courts of Appeal are split on the scope of the duty to disclose in CLRA and UCL
   omissions and fraudulent concealment claims. *Compare Collins v. eMachines, Inc.*, 134 Cal. Rptr.
24 3d 588 (Cal Ct. App. 2011) (applying four factors from *Limandri v. Judkins*, 60 Cal. Rptr. 2d 539
   (Cal. Ct. App. 1997)), *with Buller v. Sutter Health*, 74 Cal. Rptr. 3d 47, 52 n.3 (Cal. Ct. App. 2008)
25 ("respectfully disagree[ing]" with the application of the *Judkins* factors to UCL and CLRA
   omission claims to the extent that they compel a duty to disclose). Defendant cites *Wilson v.*
26 *Hewlett-Packard Co.*, 668 F.3d 1136 (9th Cir. 2012), but does not discuss the Ninth Circuit's
   analysis of *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088 (N.D. Cal. 2007), and other cases
27 applying the *Limandri* factors where the plaintiffs alleged affirmative misrepresentations or the
   CLRA and UCL claims implicated services. The Court does not reach the question of whether the
28 *Limandri* factors are properly applied here because the Court concludes that even if they did apply,
   Plaintiffs have failed to adequately allege a duty to disclose.

Case No.: 14-CV-02285-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

United States District Court
For the Northern District of California

**2.      Remaining UCL Claims**

Plaintiffs allege four additional UCL claims: two unlawful business practice claims and two unfair business practice claims, based on violations of the SCA, the Wiretap Act, and Defendant's alleged fraudulent conduct. Defendant disputes whether Plaintiffs have adequately alleged viable claims under either prong of the UCL.

California's UCL provides a cause of action for business practices that are (1) unlawful, (2) unfair, or (3) fraudulent. Cal. Bus. & Prof. Code § 17200. The UCL's coverage is "sweeping," and its standard for wrongful business conduct "intentionally broad." *In re First Alliance Mortg. Co.*, 471 F.3d 977, 995 (9th Cir. 2006) (citing *Cel-Tech Commc'ns., Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163 (1999)). The unlawful prong of the UCL "borrows violations of other laws and treats them as unlawful practices," which the UCL then "makes independently actionable." *Cel-Tech Commc'ns, Inc.*, 20 Cal. 4th at 180 (internal quotation marks and citations omitted). To support their theories of liability under the UCL's unlawful prong, Plaintiffs rely on Defendant's alleged violations of the SCA and the Wiretap Act. Compl. ¶ 77. A business practice violates the unfair prong of the UCL if it is contrary to "established public policy or if it is immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweighs its benefits." *McKell v. Wash. Mut., Inc.*, 142 Cal. App. 4th 1457, 1473 (2006). In determining whether a business practice is unfair under this approach, California courts balance the "impact on its alleged victim" against "the reasons, justifications, and motives of the alleged wrongdoer." *Id.*[10]

**a.      "Unlawful" UCL Claims**

Plaintiffs allege unlawful business practice UCL claims based on Defendant's alleged violations of the SCA and the Wiretap Act. Here, Plaintiffs state a cognizable UCL claim based on Defendant's alleged violation of the Wiretap Act. As Plaintiffs have sufficiently alleged a violation of the Wiretap Act, the UCL "unlawful" prong can serve to make that violation "independently actionable." *See Cel-Tech*, 20 Cal. 4th at 180. Defendant only argues that Plaintiffs' unlawful

---

[10] The "proper definition of 'unfair' conduct against consumers is 'currently in flux' among California courts," and some appellate opinions have applied a more stringent test, particularly for conduct that threatens an incipient violation of antitrust law. *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1169 (9th Cir. 2012).

business practice claims fail because Plaintiffs have failed to allege viable predicate claims under the SCA and the Wiretap Act. MTD at 20. While the Court agrees that Plaintiffs have failed to allege a viable predicate claim under the SCA, Plaintiffs have alleged a viable predicate claim under the Wiretap Act.

The Court therefore grants without prejudice Defendant's motion to dismiss Plaintiffs' unlawful business practice claim predicated on violations of the SCA. The Court denies Defendant's motion to dismiss Plaintiffs' unlawful business practice claim predicated on violations of the Wiretap Act.

### b.    "Unfair" UCL Claims

Plaintiffs offer two theories for their unfair business practice UCL claims: (1) the SCA and the Wiretap Act codify public policies safeguarding electronic privacy rights that Defendant has violated and (2) Defendant's fraudulent conduct injures consumers in such a way that the harm outweighs any benefit to consumers. Defendant contends Plaintiffs' unfair business practice UCL claims do not meet either test for determining actionable "unfairness" under California law. MTD at 20–22. The Court addresses each theory in turn.

Under California law, there are at least two tests for determining "unfairness": the "tethering test" and the "balancing test." *See Herskowitz v. Apple, Inc.*, 940 F. Supp. 2d 1131, 1145 (N.D. Cal. 2013). The "tethering test" requires "that the public policy which is a predicate to a consumer unfair competition action under the 'unfair' prong of the UCL must be tethered to specific constitutional, statutory, or regulatory provisions." *Drum v. San Fernando Valley Bar Ass'n*, 182 Cal. App. 4th 247, 257 (2010). Under the "balancing test," a business practice is unfair "if it is immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweighs its benefits." *McKell*, 142 Cal. App. 4th at 1473.

Under the "tethering test," Plaintiffs allege that the SCA and the Wiretap Act establish a public policy of ensuring "the privacy of electronic communications." Opp. at 20. Defendant's sole argument is that Plaintiffs have not pled viable predicate violations of the SCA and the Wiretap Act. The Court finds that Plaintiffs have sufficiently alleged violations of the Wiretap Act and

Case No.: 14-CV-02285-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

1    therefore an unfair business practice claim under the UCL. However, as discussed above, the Court

2    dismisses Plaintiffs' unfair business practice UCL claim based on violations of the SCA.

3         Under the "balancing" test, Plaintiffs claim Apple "intended that California consumers

4    would be misled and/or deceived into believing that messages sent from their non-Apple phones

5    would not be interfered with . . . and that their text message would be delivered . . . when in reality

6    [they] were not." Compl. ¶ 80. Plaintiffs' allegations and arguments rely on Defendant's alleged

7    "unified course of fraudulent conduct" as the basis of their claim, and as such, the pleading must

8    satisfy the heighted standard of Rule 9(b). *Kearns*, 567 F.3d at 1125; *Baba v. Hewlett-Packard*, No.

9    09-05946, 2011 WL 317650, at *5 (N.D. Cal. Jan. 28, 2011). *See* Opp. at 20–21. Here, Plaintiffs do

10   not "explicitly aver 'the who, what, when, where, and how'" of Defendant's alleged fraudulent

11   conduct. *In re Actimmune Mktg. Litig.*, No. 08-02376, 2010 WL 3463491, at *9 (N.D. Cal. Sept. 1,

12   2010). Plaintiffs' single conclusory allegation that Apple intended to deceive consumers is

13   insufficient to give Apple "notice of the particular misconduct which is alleged to constitute the

14   fraud charged so that [Apple] can defend against the charge . . . ." *See Semegen*, 780 F.2d at 731.

15   Moreover, Plaintiffs have failed to allege actual reliance on any fraudulent conduct. *See Kane*,

16   2013 WL 5289253, at *6. As Plaintiffs have failed to plead the details of Apple's alleged

17   fraudulent conduct with sufficient particularity and failed to plead actual reliance, the Court grants

18   Defendant's motion to dismiss Plaintiffs' unfair business practice UCL claim based on fraudulent

19   conduct.

20        In summary, the Court denies Defendant's motion to dismiss Plaintiffs' unlawful and unfair

21   business practices UCL claims based on violations of the Wiretap Act. The Court grants without

22   prejudice Defendant's motion to dismiss Plaintiffs' unlawful and unfair business practices UCL

23   claims based on violations of the SCA and Defendant's alleged fraudulent conduct.

24   **IV.    CONCLUSION**

25        For the reasons discussed above, the Court rules as follows:

26        •    The Court GRANTS without prejudice Defendant's motion to dismiss Plaintiffs'

27             SCA claim.

28        •    The Court DENIES Defendant's motion to dismiss Plaintiffs' Wiretap Act Claim.

22

- The Court GRANTS without prejudice Defendant's motion to dismiss Plaintiffs' CLRA claim and all UCL claims based on Apple's alleged fraudulent conduct, misrepresentations, or omissions.
- The Court GRANTS without prejudice Defendant's motion to dismiss Plaintiffs' unlawful and unfair business practices UCL claims predicated on violations of the SCA.
- The Court DENIES Defendant's motion to dismiss Plaintiffs' unlawful and unfair business practices UCL claims predicated on violations of the Wiretap Act.

Plaintiffs shall file a Consolidated Amended Complaint within 21 days of this order. *See* Case Management Order, ECF No. 24. Failure to cure the deficiencies identified in this Order in the Consolidated Amended Complaint will result in a dismissal with prejudice of Plaintiffs' SCA claim, CLRA claim, and UCL claims based on fraudulent conduct, misrepresentations or omissions, and violations of the SCA. Plaintiffs may not add new causes of action or parties without leave of the Court or stipulation of the parties pursuant to Federal Rule of Civil Procedure 15.

**IT IS SO ORDERED.**

Dated:          November 19, 2014

_Lucy H. Koh_

LUCY H. KOH
United States District Judge

Case No.: 14-CV-02285-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS