WILLIAM M. AUDET (CA SBN 117456)
waudet@audetlaw.com
JOSHUA C. EZRIN (CA SBN 220157)
jezrin@audetlaw.com
THEODORE H. CHASE (CA SBN 295823)
tchase@audetlaw.com
AUDET & PARTNERS, LLP
221 Main Street, Suite 1460
San Francisco, CA 94105
T. 415.568.2555
F. 415.568.2556

*Counsel for Plaintiffs and the Proposed Class*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| ADAM BACKHAUT, BOUAKHAY JOY BACKHAUT, and KENNETH MORRIS, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC.,<br><br>Defendant. | **CASE NO. 5:14-cv-02285 LHK**<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>1. **ELECTRONIC COMMUNICATIONS PRIVACY ACT, 18 U.S.C. § 2510,** *et seq.*<br><br>2. **UNFAIR COMPETITION LAW, Cal. Bus. & Prof. Code § 17200,** *et seq.*<br><br>**JURY DEMAND** |

Plaintiffs Adam Backhaut and Bouakhay Joy Backhaut, husband and wife, and Kenneth Morris ("Plaintiffs"), each on his or her own behalf and on behalf of all others similarly situated, make the following allegations against Defendant Apple Inc. ("Defendant" or "Apple"), such allegations are made based on each Plaintiff's personal knowledge and/or are based upon the investigation of counsel:

**Introduction**

1. This case concerns violations by Defendant Apple of the Electronic Communications Privacy Act, 18 U.S.C. § 2510, and California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*, by Apple's accessing and intercepting the delivery of text messages sent by current iPhone users with iMessage enabled ("iPhone/iMessage Users") to former iPhone/iMessage Users (i.e. users who switched from an iPhone to a mobile device running a competing operating system).

2. By way of this class action, Plaintiffs seek to remedy Apple's continued accessing and intercepting of text messages sent to former iPhone/iMessage Users.

3. As used in this complaint, the terms "text" or "text message" are generic terms for brief, electronic messages between two or more mobile devices. There are multiple technologies for sending text messages, including the traditional Short Message Service and Multimedia Messaging Service ("SMS/MMS") protocols as well as Apple's proprietary iMessage System.

4. As detailed in this complaint, after a user stops using an iMessage-enabled iPhone and switches his or her wireless service to another mobile device running a different operating system (e.g. Android, Windows Phone, or BlackBerry), Apple improperly retains the former iPhone/iMessage User's phone number in its iMessage systems.

5. When a current iPhone/iMessage User sends a text message to the former iPhone/iMessage User, Apple intercepts that text messages and diverts it from the standard SMS/MMS protocols to Apple's iMessage system. The text message is, therefore, never received by the intended recipient and because of Apple's interception and unauthorized access.

6. Apple never informs either the sender or the intended recipient of its interception and unauthorized access of the text message.

**The iMessage System**

7. Apple designs and sells smartphones and other mobile devices that run Apple's proprietary mobile operating system. Apple's mobile operating system is iOS. Apple's iOS was initially released on June 29, 2007. The current version of iOS, known as iOS 7, was released on September 18, 2013. Apple's iOS version 7 was last updated on April 22, 2014 to iOS version 7.1.1.

8. Since the release of iOS 5 on October 12, 2011, Apple has offered a proprietary messaging service known as "iMessage."

9. The client application of iMessage, which appears on the user's iOS home screen, is called "Messages." According to Apple, iMessage allows iPhone users to send texts, photos, and other content over Wi-Fi or cellular data networks to other iPhone users.

10. iMessage operates as an "alternative" to the standard SMS/MMS used to send text messages on other mobile phones. As advertised by Apple, Messages has the ability to send iMessages to other iMessage users and SMS/MMS messages to those who do not use iMessage.

11. Once an iPhone user activates iMessage, when he or she opens Messages and sends a text or photo message, the interface is exactly the same for sending iMessage content and SMS/MMS messages.

12. The Messages interface does not allow the user to select whether a text message will be sent using iMessage or SMS/MMS.

13. Messages automatically checks if the contact to whom the text message is being sent is also registered as an iMessage user. If the recipient is registered as an iMessage user, the text message is sent as an iMessage, bypassing the SMS/MMS system of the sender's cellular carrier. If the recipient is not an iMessage user, the text message is sent as an SMS/MMS.

14. Based on Apple's programming, the sender can determine how the outgoing message was sent through the background color of the message. A text message in blue used iMessage, and text messages in green used SMS/MMS.

15. One purported advantage of using iMessage is the ability to see if a message was "received." Once a message has been received, the word "delivered" will appear under the text message on the sender's phone.

16. Unfortunately, text messages sent to former iPhone/iMessage Users improperly intercepted by Apple will also display as "delivered" even though they never actually reach their intended recipient.

17. On its website, Apple provides the following description for Messages:

> If you're a texter, you'll love Messages on iPhone, iPad, and iPod touch. Now they all come with iMessage, a service that's an even better kind of texting. Because it's free for you and anyone texting over Wi-Fi using an iOS device or Mac with iMessage. And it's unlimited. So say as much as you want.
>
> iMessage lets you send messages back and forth with anyone on iPad, iPhone, iPod touch, or a Mac running Mountain Lion or later. Send photos, videos, locations, and contacts, too. If you have more than one Apple device, iMessage keeps the conversation going across all of them. And you can text and send photos and videos via MMS to other mobile phones over cellular networks. Even ask Siri to text for you. Just say "Tell Peter I'm on my way" and Siri writes your message and fires it off.
>
> Send a message to one person or to many friends at once — along with photos, videos, or links you like. When someone replies, everyone sees it. With more people you'll get more texts, but remember, it's iMessage, so every text is free over Wi-Fi.
>
> It's reassuring to know your text was read — or even received. iMessage tells you if your text went through. If the recipient has read receipts enabled, you'll see that your message was read, too. And since no one likes to be interrupted, iMessage shows you when someone's in the middle of a reply.
>
> On iPhone, when your text bubble is blue instead of green, you'll know you're using iMessage instead of SMS. You'll know that you can get a quicker response. You'll know that the text session is free. You'll know it's been sent to all your recipients' Apple devices. And you'll know they received the text. SMS texters will be green with envy.

(https://www.apple.com/ios/messages/).

**The Problem with iMessage**

18. Apple is interfering with the text messages of mobile users who switch from being Apple customers to using a competitor's phone or mobile device (e.g. an Android, Windows Phone, or BlackBerry device).

19. Apple's iMessage system for transmitting text messages bypasses a user's SMS/MMS system, and, therefore, does not route through the user's text messaging plan. Instead, the text is sent via Apple's iMessage system. Once a user's phone number is registered to use iMessage, all text messages sent to it by other iMessage users will route through iMessage.

20. Former iPhone/iMessage Users who switch to using another type of mobile device continue to be registered with Apple as iPhone/iMessage Users. Thus, if a current iPhone/iMessage User sends a text message to one of his or her contacts that is a former iPhone/iMessage User, that text message is intercepted by Apple as an "iMessage" and is never delivered to its intended recipient (the former iPhone/iMessage user).

21. Due to the fact that the message is intercepted by Apple and treated as an iMessage on the sender's phone, the message will display the "delivered" tag despite the fact the text never reaches its intended recipient. Accordingly, the sender believes the message was delivered to its intended recipient despite the fact that it was not and the former iPhone/iMessage user has no way of knowing that Apple intercepted the message.

22. Apple's authorization to access the text messages of its iPhone/iMessage User customers ends when they cease to be iPhone users.

23. Apple fails to remove former iPhone/iMessage Users' information from its iMessage system, which results in Apple's continued improper accessing and intercepting of text messages sent to former iPhone/iMessage Users.

**Apple's Knowledge of the Problem**

24. Apple has been aware of this issue as early as January 5, 2012.

25. On January 5, 2012, CNET News published an article entitled "iMessage bug swats iPhone owners who switch to Android." (http://news.cnet.com/8301-13506_3-57353017-17/imessage-bug-swats-iphone-owners-who-switch-to-android/).

26. On July 15, 2013, Fast Company published an article entitled "I Switched From iPhone to Android and Now I Can't Get Texts." (http://www.fastcolabs.com/3014297/i-switched-from-iphone-to-android-and-now-i-cant-get-texts).

27. On September 16, 2013, Mashable published an article entitled "Will Apple Ever Fix the iMessage Text-Killing Problem?" (http://mashable.com/2013/09/16/imessage-problem/).

28. On May 13, 2014, Gizmodo published an article "When Apple Damns Your Texts to iMessage Purgatory." (http://gizmodo.com/when-apple-damns-your-texts-to-imessage-purgatory-1575937398)

29. On May 14, 2014, Business Insider published an article entitled "An Apple Employee Admits That iPhones Often Won't deliver Texts if You Switched to Android." (http://www.businessinsider.com/iphone-wont-deliver-imessage-texts-to-android-2014-5).

30. Additionally, there have been numerous complaint threads on Apple-related websites, including Apple's own support website detailing the problems alleged herein. The responses in these complaint forums demonstrate that Apple is aware of the issue, but has failed to remedy the problem. A purported "fix" was introduced by Apple on or around November 11, 2014, but subsequent online complaints have referenced continued problems and delays.

31. Class members are often unaware that they are affected by the problem, as the senders are viewing the messages as delivered and the intended recipients are unaware that the messages were intercepted by iMessage.

32. Some reports have even indicated that Apple's technical support may charge class members $19.00 to "fix" the issue.

**The Parties**

33. Plaintiffs Adam Backhaut and Bouakhay Joy Backhaut, husband and wife, are citizens of Michigan, residing in Macomb County, Michigan.

34. Plaintiff Kenneth Morris is a citizen of California, residing in Riverside County, California.

35. Defendant Apple Inc. is a California corporation with its headquarters and principal place of business at 1 Infinite Loop, Cupertino, Santa Clara County, California. Apple is the designer and seller of the iPhone and other mobile devices and designer and maker of iOS and iMessage.

## Jurisdiction and Venue

36. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 as one of the claims arises under the laws of the United States. Specifically, the Electronic Privacy Communications Act, 18 U.S.C. § 2510, *et seq.*

37. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. Sections 1332(a) and (d), because the amount in controversy exceeds $5,000,000.00 exclusive of interest and costs, and more than two thirds of the members of the Class are citizens of states different from those of Defendant.

38. Venue is proper in this District under 28 U.S.C. 1391(b) because Defendant's improper conduct alleged in this complaint occurred in, was directed from, and/or emanated from this judicial district. The Defendant is a California corporation with its principal places of business in this district.

## The Named Plaintiffs

**Adam and Joy Backhaut**

39. Plaintiff Adam Backhaut purchased an iPhone 5 in December 2012 at a Best Buy store in Michigan. At the time of purchase, a Best Buy employee set up his iPhone 5, including iMessage. Mr. Backhaut used the iPhone 5 for approximately one year.

40. Plaintiff Joy Backhaut purchased an iPhone 5 at the same time and place as her husband and a Best Buy employee also set up her iPhone 5, including iMessage.

41. In December 2013, Plaintiff Adam Backhaut purchased an "HTC One" for approximately $250.00, which runs an Android operating system, and switched the number previously associated with his iPhone 5 to his new phone.

42. Apple's authorization to access or intercept Mr. Backhaut's text messages ended when he switched to an HTC One.

43. Following Mr. Backhaut's switch to an Android based phone, Mrs. Backhaut continued to text her husband as she had previously used the Messages app on her iPhone. When Mrs. Backhaut texted her husband, her iPhone indicated that the texts she was sending were "delivered." In fact, Mr. Backhaut never received these messages. The messages continued to be intercepted by Apple's iMessage system, despite the fact that the Plaintiff was no longer an iPhone user

44. Over the course of a few weeks following his purchase of an Android phone, Apple's iMessage system intercepted texts intended for Mr. Backhaut from not only his wife but also from others.

45. After Mr. Backhaut realized that he was not receiving his text messages because they were being intercepted by Apple, Mr. Backhaut attempted to remove his phone number from the iMessage system but was unsuccessful. Apple continued to intercept text messages intended for him from his wife, business associates, and anyone else who was an iPhone/iMessage User.

**Kenneth Morris**

46. Plaintiff Kenneth Morris was an iPhone user from November 2007 through December 2012.

47. Mr. Morris purchased his last iPhone, an iPhone 5, in October 2012 at an Apple Store in Palm Springs, California. Mr. Morris used iMessage on that iPhone 5. Mr. Morris purchased an Android-based phone in December 2012.

48. Apple's authorization to access or intercept Mr. Morris' text messages ended when he switched to an Android-based phone.

49. Mr. Morris attempted to remove his phone number from the iMessage system but continued to have his text messages intercepted by Apple through iMessage.

50. Mr. Morris even went so far as to ask his contacts to manually change the settings in their iPhones to send him texts as SMS messages rather than through iMesssage by

1 deleting and then reentering his contact information. While this "fix" initially worked, after
2 Apple released the iOS update version 7.1.1, the problem started anew. Even those contacts who
3 had manually changed their settings to send texts via SMS/MMS continued to have problems
4 with texting the Plaintiff.

**Class Allegations**

6  51. Pursuant to the Federal Rules of Civil Procedure 23(a), (b)(1), and (b)(2),
7 Plaintiffs bring this action as a class action on behalf of themselves and all others similarly
8 situated as members of the following Classes:

> **All persons residing in the United States who are former iPhone/iMessage Users who switched to a non-iOS device and whose text messages from current iMessage-enabled iPhone users were intercepted by iMessage and not received.**

12  52. Excluded from the Class are Defendants, their legal representatives, assigns, and
13 successors, and any entities in which Defendants have controlling interests. Also excluded is the
14 judge to whom this case is assigned and the judge's immediate family.

15  53. Plaintiffs reserve the right to revise this definition of the Class based on facts
16 learned in the course of litigating this matter.

17  54. The Class consists of thousands of individuals, making joinder impractical.

18  55. The claims of Plaintiffs are typical of the claims of all other Class Members.

19  56. Plaintiffs will fairly and adequately represent the interests of the other Class
20 Members. Plaintiffs have retained counsel with substantial experience in prosecuting complex
21 litigation and class actions. Plaintiffs and their counsel are committed to prosecuting this action
22 vigorously on behalf of Class Members and have the financial resources to do so. Neither
23 Plaintiffs nor their counsel have any interests adverse to those of the other Class Members.

24  57. Absent a class action, most Class Members would find the cost of litigating their
25 claims to be prohibitive and would have no effective remedy.

26  58. The class treatment of common questions of law and fact is superior to multiple
27 individual actions or piecemeal litigation in that it conserves the resources of the courts and the
28 litigants, and promotes consistency and efficiency of adjudication.

59. Defendant has acted and failed to act on grounds generally applicable to Plaintiffs and other Class Members, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members.

60. The following questions are common to all class members and resolution of these questions will necessarily resolve the litigation for all class members:

    a. Whether Apple accessed without authorization facilities through which electronic communication services are provided;

    b. Whether Apple exceeded its authorization in accessing facilities through which electronic communication services are provided;

    c. Whether Apple intercepted the electronic communications of class members;

    d. Whether Apple's conduct is unfair, or unlawful and/or violates federal law;

    e. Whether Apple represented iMessage as having characteristics it did not have; and

    f. Whether Apple concealed the true nature of iMessage.

## Count One

## Violation of the Electronic Communications Privacy Act

## (18 U.S.C. § 2510, *et seq.*)

61. Plaintiffs incorporate by reference the allegations set forth above.

62. Apple intentionally intercepted the electronic communications of Plaintiffs and the proposed class.

63. Upon information and belief, Apple intercepts the text messages immediately after they are sent by current iPhone/iMessage Users.

64. Upon information and belief, Apple receives and stores these messages through the employment of a mechanical or electrical tool or apparatus that is considered a device under 18 U.S.C § 2511.

65. Apple's interception and internment of messages sent by current iPhone/iMessage Users to former iPhone/iMessage Users is intentional because Apple has been notified of the problem but failed to remedy it.

66. Apple's conduct violated 18 U.S.C. § 2511 and gives rise to a claim under 18 U.S.C. § 2520.

## Count Two

## California Unfair Competition Law

## (Cal. Bus. & Prof. Law § 17200, *et seq.*)

67. Plaintiffs incorporate by reference the allegations set forth above.

68. Apple's conduct with regard to the iMessage problem is an unfair and unlawful business practice in violation of California Business and Professions Code § 17200.

69. California Business and Professions Code § 17200 applies to all claims of all the Class members because the conduct which constitutes violations of the code by Apple occurred within the State of California.

70. Defendant engaged in and continues to engage in acts or practices that constitute unfair competition as defined by Business and Professions Code section 17200, those acts include, but are not limited to:

   a. Interfering and intercepting messages to mobile phone users who no longer use Apple's iMessage system despite the fact that Apple no longer had authorization to view those messages;

   b. Failing to release intercepted messages to their intended recipients; and

   c. Notifying mobile phone users that their SMS/MMS messages had been delivered when in fact they had not been delivered to the intended recipients.

**UNLAWFUL PRONG OF THE UCL**

71. The unlawful acts and practices of Defendant alleged above constitute unlawful business acts and/or practices within the meaning of California Business and Professions Code section 17200. Defendants' unlawful business acts and/or practices as alleged herein have violated numerous state, statutory and/or common laws. These predicate unlawful business acts and/or practices include, but are not limited to violations of the Federal Wire Tap Act (18 U.S.C. § 2511).

**UNFAIR PRONG OF THE UCL**

72. Apple's interception and interment of SMS/MMS messages, in addition to its deceptive notification of a delivered message, of former iMessage users, as alleged in this action, constitute tortious conduct that gave Defendant an unfair competitive advantage over its competitors who did not engage in such practices. Said misconduct, as alleged herein, also violated established law and/or public policies which seek to ensure the privacy of electronic communications and full disclosure of unauthorized access to said communications. Intercepting and failing to disclose to consumers unauthorized access of their private electronic communications, as alleged herein, was and is directly contrary to established legislative goals and policies promoting privacy and authorized access to electronic communications. Therefore, Defendant's acts and/or practices alleged herein were and are unfair within the meaning of Business and Professions Code section 17200.

73. The harm to California consumers outweighs the utility, if any, of Defendant's acts and/or practices as alleged herein. Thus, Defendant's deceptive business acts and/or practices, as alleged herein, were unfair within the meaning of the Business and Professions Code section 17200.

74. In addition, as alleged herein, Defendant intended that California consumers would be misled and/or deceived into believing that messages sent from their non-Apple phones would not be interfered with by Apple, and that their text messages would be delivered to their intended recipients when in reality there were not.

75. At all relevant times, Defendant's misconduct and omissions alleged herein: (a) caused substantial injury to the Public; (b) had no countervailing benefit to consumers or to competition that could possible outweigh this substantial injury; and (c) caused damage to ordinary consumers. Thus, Defendant's acts and/or practices as alleged herein were unfair within the meaning of Business and Professions Code section 17200.

76. California consumers have been, and continue to be, injured by Defendant's interception and internment of their SMS/MMS messages by Apple. California consumers have suffered damage and lost money as a result of the deceptive conduct as alleged herein. The

unlawful andunfair business acts and practices of Defendants, as fully described herein, present a continuing threat to the citizens of California to be misled and/or deceived by Defendants as alleged herein, and or to be substantially damaged by the interception and internment of their SMS/MMS messages.

77.  Plaintiffs and the Class have been injured and have suffered loss of money or property as a result of Apple's unfair and unlawful business acts and practices.

78.  Plaintiffs suffered injury by paying for Android phones that do not fully function because of Apple's continued unauthorized registration and use of their phone numbers.

79.  Plaintiffs suffered injury by paying more for iPhones than they would have if they had known they would not be able to stop using an iPhone in the future once their numbers were registered in iMessage.

80.  Plaintiffs also requests appropriate relief to prevent Apple from continuing its unfair, deceptive, and unlawful practices with regard to iMessage.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, pray for judgment against Defendant as follows:

A. Certify this case as a class action on behalf of the classes defined above, appoint Plaintiffs as class representatives, and appoint the undersigned counsel as Class Counsel;

B. Declare that the actions of Defendant, as set out above, violate:

   a. Electronic Communications Privacy Act, 18 U.S.C. § 2510, *et seq.*;

   b. Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*; and

C. Award injunctive and equitable relief including, *inter alia*, (i) prohibiting Defendant from engaging in the acts alleged above; (ii) requiring Defendant to disgorge all of its ill-gotten gains to Plaintiffs and the other members of the classes, or to whomever the Court deems appropriate; (iii) requiring Defendant to disclose the problems alleged in the Complaint;

D.  Restrain Defendants, their officers, agents, servants, employees, and attorneys, and those in active concert or participation with them, from continued unauthorized access and interference with Plaintiffs' and Class Members' text messages;

E.  Award Plaintiffs and the Classes:

   a.  their reasonable litigation expenses and attorneys' fees;

   b.  pre- and post-judgment interest, to the extent allowable;

   c.  restitution, disgorgement and/or other equitable relief as the Court deems proper;

   d.  permanent injunction prohibiting Defendants from engaging in the conduct and practices complained of herein;

   e.  statutory damages under 18 U.S.C. § 2520;

   f.  punitive damages as allowed by law;

F.  For such other and further relief as this Court may deem just and proper.

Dated: December 10, 2014                                            AUDET & PARTNERS, LLP

/s/ Joshua C. Ezrin
Joshua C. Ezrin
jezrin@audetlaw.com
221 Main Street, Suite 1460
San Francisco, CA 94105
t. 415.568.2555
f. 415.568.2556

*Attorneys for Plaintiffs*

**JURY TRIAL DEMAND**

The Plaintiffs hereby demand a trial by jury of all issues so triable.

Dated: December 10, 2014.

/s/ Joshua C. Ezrin
By:   Joshua C. Ezrin