1
2
3
4
5
6
7
8
9
10
11

United States District Court
Northern District of California

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

ADAM BACKHAUT, et al.,

Plaintiffs,

v.

APPLE INC.,

Defendant.

Case No.14-CV-02285-LHK

**ORDER DENYING MOTION FOR CLASS CERTIFICATION**

Re: Dkt. Nos. 50; 84

Plaintiffs Adam Backhaut and Kenneth Morris (collectively, "Plaintiffs") bring this putative class action on behalf of themselves and others similarly situated against Defendant Apple, Inc. ("Defendant") for violations of the Wiretap Act, 18 U.S.C. § 2510 and California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200. First Am. Compl. ("FAC"), ECF. No. 29. The gravamen of Plaintiffs' FAC is that Apple wrongfully intercepts, stores, and otherwise prevents former Apple device users from receiving text messages sent to them from current Apple device users. Before the Court is Plaintiffs' motion for class certification. ("Mot."), ECF No. 50. Defendant opposed the motion. ("Opp."), ECF No 75. Plaintiffs replied. ("Reply"), ECF No. 78.[1]

---

[1] The parties also filed sealing motions in connection with the instant motion for class certification. ECF Nos. 59; 75; 78. The Court addresses those motions in a separate order.

1    Having considered the submissions of the parties, the relevant law, and the record in this case, the

2    Court hereby DENIES Plaintiffs' motion for class certification.

3    **I.   BACKGROUND**

4       **A.  Factual Allegations**

5           Defendant Apple, Inc., a California corporation headquartered in Cupertino, California is

6    the "designer and seller" of the iPhone and other mobile devices that run "Apple's proprietary

7    mobile operating system." FAC ¶¶ 7, 35. Apple's mobile operating system is known as "iOS" and

8    its first iteration was released on June 29, 2007. *Id.* ¶ 7. On October 12, 2011, Apple released iOS

9    5, which included a "proprietary messaging service known as 'iMessage'" that runs on a client

10   application called "Messages." *Id.* ¶¶ 8–9. Plaintiff Adam Backhaut is a resident of Michigan that

11   purchased an iPhone in December 2012. *Id.* ¶¶ 33, 39, 40. Plaintiff Morris is a resident of

12   California and purchased his last iPhone in October 2012. *Id.* ¶¶ 34, 47. Plaintiffs all used Apple's

13   iMessage and Messages application on their iPhones. Plaintiffs switched from Apple iPhones to

14   non-Apple phones in December 2013 and December 2012 respectively. *Id.* ¶¶ 41, 47.

15          Plaintiffs allege that Apple "intentionally intercepted the electronic communications of

16   Plaintiffs and the proposed class.," and intercepts the text messages immediately after they are sent

17   by current iPhone/iMessage Users." *Id.* ¶¶ 62–63. Plaintiffs contend that Apple wrongfully

18   "receives and stores these messages through the employment of a . . . device under" the Wiretap

19   Act. *Id.* ¶ 64. Plaintiffs further allege that these unlawful business practices support claims under

20   California's Unfair Competition Law ("UCL"). *Id.* ¶ 68. Plaintiffs also allege "unfair" business

21   practices under the UCL. *Id.* ¶ 72.

22          **1.   Text Messages, iMessages, and Messages**

23          "Text messages" or "texts" are "brief, electronic messages between two or more mobile

24   devices." *Id.* ¶ 3. There are "multiple technologies" for sending text messages, but the

25   "traditional" or standard technology is the Short Message Service and Multimedia Messaging

26   Service ("SMS/MMS") protocols. *Id.* ¶¶ 3, 5. As an alternative to this standard protocol, Apple's

27   proprietary text messages are known as "iMessages" and are sent using the "Messages" client

28

United States District Court
Northern District of California

2

application. *Id.* ¶¶ 8–10. Instead of the SMS/MMS protocol for sending and receiving messages, iMessages use Wi-Fi and cellular data networks to send messages and other content between two Apple devices. *Id.* ¶¶ 9–10.

"Once an iPhone user activates iMessage," the interface for sending iMessages and SMS/MMS text messages on the Messages client application is the same. *Id.* ¶ 11. The Messages application "automatically checks if the contact to whom the text message is being sent is also registered as an iMessage user." *Id.* ¶ 13. If the contact is registered as an iMessage user, the text message is sent as an iMessage, "bypassing the SMS/MMS system of the sender's cellular carrier." *Id.* If the contact is not registered as an iMessage user, the text message is sent as an SMS/MMS. *Id.* The Messages application "does not allow the user to select whether a text message will be sent using iMessage or SMS/MMS." *Id.* ¶ 12. However, a sender can see whether a message was sent using iMessage or SMS/MMS based on the background color of the message: blue for iMessage and green for SMS/MMS. *Id.* ¶ 14. When an iMessage is "received, the word 'delivered' will appear under the text message on the sender's phone." *Id.* ¶ 15.

### 2. Plaintiffs' Experiences

#### a. Plaintiff Backhaut

In December 2012, Plaintiff Backhaut and his spouse, Joy Backhaut,[2] purchased iPhone 5s in Michigan. *Id.* ¶ 39–40. "At the time of purchase," a Best Buy employee set up their iPhones, including iMessage. *Id.* In December 2013, Plaintiff Backhaut purchased a "HTC One," a non-Apple mobile device that runs on an Android operating system. *Id.* ¶ 41. Following Plaintiff Backhaut's switch, his spouse Joy continued to send Plaintiff Backhaut text messages from her iPhone. *Id.* ¶ 43. On Joy Backhaut's phone, the word "delivered" appeared under her messages to her spouse, but Plaintiff Backhaut never received those messages. *Id.* Upon realizing that he was not receiving certain text messages, Plaintiff Backhaut "attempted to remove his phone number

---

[2] Joy Backhaut was a named plaintiff in this action. On August 7, 2015, Joy Backhaut filed a motion to voluntarily dismiss with prejudice her claims against Apple. ECF No. 84. On August 11, 2015, Defendant filed a response indicating that it did not oppose Joy Backhaut's motion. ECF No. 88. The Court therefore GRANTS the motion to dismiss with prejudice.

Case No.14-CV-02285-LHK
ORDER DENYING MOTION FOR CLASS CERTIFICATION

1    from the iMessage system but was unsuccessful." *Id.* ¶ 45.

2              **b.  Plaintiff Morris**

3              Plaintiff Morris was an iPhone user from November 2007 to December 2012. *Id.* ¶ 46. He

4    purchased his last iPhone, an iPhone 5, in October 2012. *Id.* ¶ 47. In December 2012, Plaintiff

5    Morris purchased a non-Apple phone. *Id.* Morris also "attempted to remove his phone number

6    from the iMessage system" but was unable to do so. *Id.* ¶ 49. Morris also asked his contacts to

7    manually change the settings in their iPhones to send him SMS/MMS messages rather than

8    iMessages. *Id.* This resolved the problem until Apple released iOS 7.1.1, at which point even

9    contacts that had manually changed their settings had difficulties sending Morris text messages.

10   *Id.* ¶ 50.

11             **3.  Apple's Knowledge and Response**

12             According to Plaintiffs, Defendant Apple "first learned of the aforementioned iMessage

13   bug within weeks of the application's release." Mot. at 3. Plaintiffs cite an internal Apple email

14   from December 23, 2011, describing requests from cellular service providers regarding how

15   customers could "turn[] off" iMessage. *See* Declaration of Joshua Ezrin in support of Plaintiffs'

16   motion for class certification, ("Ezrin Decl."), ECF No. 59, Exh. F, at APL-Backhaut_00054344.

17   Plaintiffs also cite a January 6, 2012 email from Verizon Wireless to Apple employees requesting

18   a solution to the problem of former iPhone users not receiving their messages from current iPhone

19   users. Ezrin Decl., Exh. G.

20             At the same time as these emails, Plaintiffs note that the "the online AppleCare Support

21   Communities website was being inundated with comments and complaints regarding the"

22   iMessage problem. Mot. at 4. On October 29, 2011, an individual posted the following statement

23   on an AppleCare board: "My friend had an iPhone 4 with iOs5 and has recently switched to a

24   different phone . . . . My iPhone is still attempting to send him iMessages and obviously they are

25   getting lost in the ether . . . ." Ezrin Decl., Exh. H. In the three years since that original post, there

26   have been 76 replies to the quoted post. *See id.* Plaintiffs also cite a variety of other comments and

27   complaints on the AppleCare website dated December 16, 2011, March 2, 2012, June 24, 2012,

28

United States District Court
Northern District of California

Case No.14-CV-02285-LHK
ORDER DENYING MOTION FOR CLASS CERTIFICATION

1   and January 19, 2015, with hundreds of similar replies and comments by individuals. Mot. at 5.

2        Plaintiffs contend that Defendant "has not made any changes to the structural defect that

3   cause [sic] the messages to be intercepted," despite being aware of the issue as early as December

4   2011. Mot. at 7. Though Defendant announced in November 2014 that former iPhone users could

5   de-register from iMessage online, Plaintiffs contend that this "fix" does not immediately resolve

6   the issue. Citing internal Apple emails, Plaintiffs note that it can take anywhere from 3 to 24 hours

7   for de-registration to sync across Apple servers. Mot. at 9 (citing Ezrin Decl., Exh. Z). Plaintiffs

8   further argue that other de-registration solutions, including Defendant's internal de-registration

9   process and collaborative efforts between Defendant and wireless service providers have not

10  prevented interceptions of text messages. *Id.* at 8–9.

11  **B. Procedural History**

12       Plaintiffs filed their original complaint on May 16, 2014. ECF No. 1. Defendant filed its

13  motion to dismiss on August 18, 2014. ECF No. 12. As part of its motion to dismiss, Defendant

14  also filed a request for judicial notice, which Plaintiffs did not oppose. ECF No. 12. Plaintiffs filed

15  their opposition on September 22, 2014. ECF No. 16. Defendant filed its reply on October 21,

16  2014. ECF No. 17. On November 19, 2014, the Court granted in part and denied in part

17  Defendant's motion to dismiss. ECF No. 27. The Court granted without prejudice Defendant's

18  motion to dismiss Plaintiffs' Stored Communications Act claim; UCL claims based on violations

19  of the Stored Communications Act claim; California Consumer Legal Remedies Act claim; and

20  UCL claims based on fraudulent conduct. *Id.* at 22–23. The Court denied Defendant's motion to

21  dismiss Plaintiffs' Wiretap Act claim and UCL claims based on violations of the Wiretap Act. *Id.*

22       On December 10, 2014, Plaintiffs filed their FAC. ECF No. 29. Defendant filed an answer

23  on January 7, 2015. ECF No. 31.

24       Plaintiffs filed the instant motion for class certification on May 28, 2015. ECF No. 59.

25  Defendant filed its opposition on June 26, 2015. ECF No. 75. Plaintiffs filed their reply on July

26  16, 2015. ECF No. 78.

27

28

Case No.14-CV-02285-LHK
ORDER DENYING MOTION FOR CLASS CERTIFICATION

### C. Class Definition

Plaintiffs move to certify the following class:

> All persons residing in the United States who are former iPhone/iMessage Users who switched to a non-iOS device and whose text messages from current iMessage-enabled iPhone users were intercepted by iMessage and not received.

Mot. at 14. Plaintiffs seek certification of a damages class under Rule 23(b)(3) and an injunctive relief class under Rule 23(b)(2). [3]

## II. LEGAL STANDARDS

Federal Rule of Civil Procedure 23, which governs class certification, has two sets of distinct requirements that Plaintiffs must meet before the Court may certify a class. Plaintiffs must meet all of the requirements of Rule 23(a) and must satisfy at least one of the prongs of Rule 23(b).

Under Rule 23(a), the Court may certify a class only where "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses

---

[3] The Court notes that Plaintiffs, for the first time in their reply, request that the Court certify a liability-only class under Rule 23(c)(4). *See* Reply at 13. Plaintiffs contend that even if individualized issues with respect to damages or ascertainability preclude certification under Rule 23(b)(3), the Court could certify "a liability-only class to resolve the question of whether Apple's interception violates the Wiretap Act."

First, the Court declines to entertain Plaintiffs' belated request in their reply. *See, e.g.*, *Pham v. Fin. Indus. Regulatory Auth. Inc.*, No. 12-6374 EMC, 2013 WL 1320635, at *1 (N.D. Cal. Apr. 1, 2013) ("[T]hese arguments–raised for the first time on reply– have been waived."). Second, even if the Court were to consider Plaintiffs' belated request, the Court concludes that Plaintiffs have failed to demonstrate that certification of a liability-only class under Rule 23(c)(4) would be appropriate. Plaintiffs have failed to demonstrate that the question of Defendant's liability under the Wiretap Act is susceptible to common proof. As discussed *infra*, the question of Defendant's liability under the Wiretap Act is subject to Defendant's consent defense. As each claim will ultimately require an individualized determination of whether or not a proposed class member or the sender impliedly consented to any interception, it is unclear what utility, if any, certification of a liability-only class would have. *See, e.g.*, *In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 581 (C.D. Cal. 2014) (declining to certify a Rule 23(c)(4) class where "it is unclear, at this stage, what ultimate objective certifying a class to try this issue would advance"). The Court therefore denies Plaintiffs' request.

Case No.14-CV-02285-LHK
ORDER DENYING MOTION FOR CLASS CERTIFICATION

United States District Court
Northern District of California

1 of the class; and (4) the representative parties will fairly and adequately protect the interests of the

2 class." Fed. R. Civ. P. 23(a). Courts refer to these four requirements, which must be satisfied to

3 maintain a class action, as "numerosity, commonality, typicality and adequacy of representation."

4 *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 588 (9th Cir. 2012).

5     In addition to meeting the requirements of Rule 23(a), the Court must also find that

6 Plaintiffs have satisfied "through evidentiary proof" one of the three subsections of Rule 23(b).

7 *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013). An injunctive class can be certified

8 under Rule 23(b)(2) where "the party opposing the class has acted or refused to act on grounds

9 that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is

10 appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

11     Moreover, the Court can certify a Rule 23(b)(3) class if the Court finds that "questions of

12 law or fact common to class members *predominate* over any questions affecting only individual

13 members, and that a class action is superior to other available methods for fairly and efficiently

14 adjudicating the controversy." Fed. R. Civ. P. 23(b)(3) (emphasis added). Further, courts have

15 implied an additional requirement under Rule 23 where a plaintiff seeks to certify a Rule 23(b)(3)

16 class: that the class to be certified be ascertainable. *See Marcus v. BMW of North America, LLC*,

17 687 F.3d 583, 592–93 (3d Cir. 2012); *Herrera v. LCS Fin. Servs. Corp.*, 274 F.R.D. 666, 671-72

18 (N.D. Cal. 2011); *see also In re Yahoo Mail Litig.*, No. 13-CV-4980-LHK, 2015 WL 3523908, at

19 *15–17 (N.D. Cal. May 26, 2015) (finding that ascertainability requirement applies only to

20 damages classes under Rule 23(b)(3)).

21     "[A] court's class-certification analysis must be 'rigorous' and may 'entail some overlap

22 with the merits of the plaintiff's underlying claim.'" *Amgen Inc. v. Conn. Ret. Plans & Trust

23 Funds*, 133 S. Ct. 1184, 1194 (2013) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541,

24 2551 (2011)); *see also Mazza*, 666 F.3d at 588 ("'Before certifying a class, the trial court must

25 conduct a 'rigorous analysis' to determine whether the party seeking certification has met the

26 prerequisites of Rule 23.'" (quoting *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186,

27 *amended by* 273 F.3d 1266 (9th Cir. 2001))). Nevertheless, "Rule 23 grants courts no license to

28

United States District Court
Northern District of California

7

engage in free-ranging merits inquiries at the certification stage." *Amgen*, 133 S. Ct. at 1194–95.

"Merits questions may be considered to the extent—but only to the extent—that they are relevant

to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.* at 1195.

Within the framework of Rule 23, the Court ultimately has broad discretion over whether to certify

a class. *Zinser*, 253 F.3d at 1186.

## III. DISCUSSION

Plaintiffs move to certify a nationwide class of former iPhone and iMessage users pursuant

to Federal Rules of Civil Procedure 23(b)(3) and 23(b)(2). The Court addresses Plaintiffs'

standing to sue before turning to the requirements of Rule 23(b). As to Plaintiffs' standing,

Defendant challenges whether (1) Plaintiffs have satisfied the requirements for Article III

standing; (2) Plaintiffs have satisfied the requirements for UCL standing; and (3) Plaintiffs have

satisfied the requirements for standing to seek injunctive relief. The Court addresses each

argument in turn.

### A. Standing

#### 1. Article III Standing

"In a class action, standing is satisfied if at least one named plaintiff meets the

requirements." *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (citing

*Armstrong v. Davis*, 275 F.3d 849, 860 (9th Cir. 2001)). Not only must at least one named plaintiff

satisfy constitutional standing requirements, but the plaintiff "bears the burden of showing that he

[or she] has standing for each type of relief sought." *Summers v. Earth Island Inst.*, 555 U.S. 488,

493 (2009). Article III standing to sue requires that a plaintiff show "(1) an injury-in-fact that is

concrete and particularized, as well as actual or imminent; (2) that the injury is fairly traceable to

the challenged action of the defendant; and (3) that the injury is redressable by a favorable ruling."

*Kane v. Chobani, Inc.*, 973 F. Supp. 2d 1120, 1128 (N.D. Cal. 2014) (citing *Monsanto Co. v.*

*Geertson Seed Farms*, 561 U.S. 139 (2010)).

"The party invoking federal jurisdiction bears the burden of establishing these elements."

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Because the elements of Article III

Case No.14-CV-02285-LHK
ORDER DENYING MOTION FOR CLASS CERTIFICATION

United States District Court
Northern District of California

1    standing "are not mere pleading requirements but rather an indispensable part of the plaintiff's

2    case, each element must be supported in the same way as any other matter on which the plaintiff

3    bears the burden of proof, i.e., with the manner and degree of evidence required at the successive

4    stages of the litigation." *Id.*; *see also In re iPhone Application Litig.*, No. 11-2250, 2013 WL

5    6212591 (N.D. Cal. Nov. 25, 2013).

6         On a motion for class certification, this means Plaintiffs must show standing "through

7    evidentiary proof." *Comcast*, 133 S. Ct. at 1432; *see also Evans v. Linden Research, Inc.*, No. 11-

8    1078, 2012 WL 5877579, at *6 (N.D. Cal. Nov. 20, 2012) (At class certification, "Plaintiffs must

9    demonstrate, not merely allege, that they have suffered an injury-in-fact to establish Article III

10   standing to bring the claims asserted on behalf of the [class]."); *Nelsen v. King Cnty.*, 895 F.2d

11   1248, 1249–50 (9th Cir.1990) ("Standing is a jurisdictional element that must be satisfied prior to

12   class certification."); *In re First Am. Corp. ERISA Litig.*, No. 07-1357, 2009 WL 928294 (C.D.

13   Cal. Apr. 2, 2009) ("[A]t the class certification stage, . . .  unlike on a motion to dismiss, the

14   would-be class representative must show standing, rather than merely allege it."); *In re Abbott*

15   *Labs. Norvir Anti-Trust Litig.*, No. 04-1511, 2007 WL 1689899 (N.D. Cal. June 11, 2007) ("[I]t is

16   'well-settled that prior to the certification of a class, and technically speaking before undertaking

17   any formal typicality or commonality review, the district court must determine that at least one

18   named class representative has Article III standing to raise each class subclaim.'" (quoting

19   *Wooden v. Bd. of Regents of Univ. Sys. of Georgia*, 247 F.3d 1262, 1287–88 (11th Cir. 2001)); *cf.*

20   *Baghdasarian v. Amazon.com, Inc.*, No. 05-8060, 2009 WL 4823368 (C.D. Cal. Dec. 9, 2009)

21   *aff'd*, 458 F. App'x 622 (9th Cir. 2011) ("At the class certification stage, Plaintiff must make

22   certain allegations concerning standing. . . . [At] summary judgment, Plaintiff must establish

23   certain facts.").

24        Here, Defendant contends that Plaintiffs have failed to offer any evidence showing that

25   Plaintiffs have suffered an injury-in-fact that is fairly traceable to Defendant. More specifically,

26   Defendant contends that Plaintiffs have put forth no evidence that any third party actually

27   attempted to send text messages to Plaintiffs that Plaintiffs subsequently failed to receive. Opp. at

28

Case No.14-CV-02285-LHK
ORDER DENYING MOTION FOR CLASS CERTIFICATION

United States District Court
Northern District of California

9. According to Defendant, Plaintiffs have therefore failed to show any injury-in-fact.

In the instant case, Plaintiffs contend that Defendant's alleged violations of the Wiretap Act constitute "a concrete injury as a matter of law." Reply at 4. As this Court noted in *In re Google Inc.*, No. 13-MD-02430-LHK, 2013 WL 5423918, at *16 (N.D. Cal. Sept. 26, 2013), other courts in this District have applied the Ninth Circuit's decision in *Edwards v. First American Financial Corp.*, 610 F.3d 514 (9th Cir. 2010), to find that "allegations of a Wiretap Act violation are sufficient to establish standing." (citing *In re Facebook Privacy Litig.*, 791 F. Supp. 2d 705, 712 (N.D. Cal. 2011); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1055 (N.D. Cal. 2012); *In re Google, Inc. Privacy Policy Litig.*, No. 12-01382 PSG, 2012 WL 6738343 (N.D. Cal. Dec. 28, 2012)). More specifically, "where the plaintiffs had alleged that their communications had been intercepted, they 'alleged facts sufficient to establish that they have suffered the injury required for standing under Article III.'" *In re Google Inc.*, 2013 WL 5423918, at *16 (quoting *In re Facebook Privacy Litig.*, 791 F. Supp. 2d at 712). The Court is aware that the United States Supreme Court has granted certiorari in *Spokeo, Inc. v. Robins*, 135 S. Ct. 1892 (2015), and that *Spokeo* may address whether the actual injury requirement of Article III can be satisfied solely by a defendant's invasion of a statutory legal right. In the absence of a contrary decision from the United States Supreme Court, however, the Court concludes that Defendant's alleged violation of the Wiretap Act is sufficient to satisfy the injury-in-fact requirement of Article III standing. *See In re Google Inc.*, 2013 WL 5423918, at *17 ("[C]ourts have, under existing Ninth Circuit authority, consistently held that the invasion of rights under the Wiretap Act is sufficient for Article III standing.").

Furthermore, the Court concludes that Plaintiffs have put forth "evidentiary proof" that Plaintiffs failed to receive text messages sent by third parties using iMessage. More specifically, Plaintiff Ken Morris has produced screenshots of specific text messages that he avers he did not receive from iMessage users.[4] *See* Reply Declaration of Joshua Ezrin in support of Plaintiffs'

---

[4] The Court notes that Plaintiffs did not submit the actual screenshots themselves in support of their motion for class certification. However, the screenshots are described and marked as exhibits

10

Case No.14-CV-02285-LHK
ORDER DENYING MOTION FOR CLASS CERTIFICATION

United States District Court
Northern District of California

1    motion for class certification ("Ezrin Reply Decl."), ECF No. 78, Exh. D ("Morris Depo.").

2    Plaintiff Morris also testified at deposition that specific, named individuals had informed Plaintiff

3    that they had sent Plaintiff text messages via iMessage, but Plaintiff did not receive those

4    messages. *See* Morris Depo. at 136:20–137:2 ("Q What is the basis for you saying you were

5    informed and believed that you failed to receive numerous text messages between that time

6    period? A: Again, the individuals, some of which are listed in D, began to inform me that they

7    were attempting to send text messages to me and what was going on and why wasn't I receiving

8    them or why was I not responding."); *see also* Morris Depo. at 141:1–25; 239:1–248:25; 252:1–

9    256:25 (testimony discussing other screenshots and undelivered messages). Similarly, Plaintiff

10   Adam Backhaut also testified at deposition that his spouse, family members, and friends had

11   informed Plaintiff that they had sent Plaintiff messages via iMessage that Plaintiff did not receive.

12   *See* Ezrin Decl., Exh. E ("Backhaut Depo."), at 47:22–24; 79:3–81:8. Plaintiff Backhaut further

13   testified that all of these individuals from whom Plaintiff had failed to receive text messages were,

14   in fact, using iMessage when they attempted to text Plaintiff. *Id.* at 87:22–88:24.

15        Accordingly, the Court concludes that Plaintiffs have put forth sufficient evidence to

16   satisfy the standing requirements of Article III.

17        **2.  UCL Standing**

18        In addition to its arguments regarding Plaintiffs' standing under Article III, Defendant also

19   contends that Plaintiffs have failed to satisfy the additional standing requirement under the UCL

20   that Plaintiffs have "lost money or property." Cal. Bus. & Prof. Code § 17204. For the reasons

21   discussed below, the Court concludes that Plaintiffs have failed to satisfy the "lost money or

22   property" requirement under the UCL.

23        To assert a UCL claim, a private plaintiff needs to have "suffered injury in fact and . . . lost

24   money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204; *see also*

25

26   _____

27   in Plaintiffs' depositions. *See, e.g.*, Morris Depo. at 239:13–14 (marking "Exhibit 8"); 239:18–
     240:11 ("Q: What is Exhibit 8? . . .  Q: Okay. So this screenshot came from Rufo's iPhone? A. I'm
     fairly certain.").

28
     Case No.14-CV-02285-LHK
     ORDER DENYING MOTION FOR CLASS CERTIFICATION

*Rubio v. Capital One Bank*, 513 F.3d 1195, 1203 (9th Cir. 2010). Standing under the UCL is narrower than traditional federal standing requirements: "We note UCL's standing requirements appear to be more stringent than the federal standing requirements. Whereas a federal plaintiff's 'injury in fact' may be intangible and need not involve lost money or property, Proposition 64, in effect, added a requirement that a UCL plaintiff's 'injury in fact' specifically involve 'lost money or property.'" *Troyk v. Farmers Grp., Inc.*, 171 Cal. App. 4th 1305, 1348 n.31 (Ct. App. 2009).

In the instant case, the Court finds that Plaintiffs have failed to put forth any evidence showing that Plaintiffs "lost money or property" as required to show standing under the UCL. Indeed, Plaintiffs completely fail to address Defendant's argument with respect to standing under the UCL. Plaintiffs have not identified any actual damages that they have suffered as a result of Defendant's alleged wrongful conduct. To the contrary, the only evidence in the record with respect to economic injury is Plaintiffs' statements that they are unaware of any missed business opportunities caused by undelivered text messages. *See* Cheung Decl., Exh. 2, at 105:4–10; Exh. 3, at 172:3–6. Plaintiffs do not articulate any theory of damages beyond statutory damages provided for under the Wiretap Act. Plaintiffs allege in their FAC that they overpaid for their Apple and non-Apple devices. That bare allegation would be sufficient to survive a motion to dismiss, but is insufficient to show standing at the class certification stage. *See, e.g.*, *In re First Am. Corp. ERISA Litig.*, 2009 WL 928294 ("[A]t the class certification stage, . . . unlike on a motion to dismiss, the would-be class representative must show standing, rather than merely allege it."). At the class certification stage, Plaintiffs must produce some evidence that they overpaid for their Apple and non-Apple devices. Here, Plaintiffs have failed to put forth even a deposition statement or declaration. Accordingly, the Court finds that Plaintiffs have failed to put forth any evidence in the record showing that Plaintiffs suffered any "actual economic injury" as a result of Defendant's alleged wrongful conduct. *Aron v. U-Haul Co. of Cal.*, 143 Cal. App. 3th 796, 803 (Ct. App. 2006).

The Court therefore concludes that while Plaintiffs have satisfied Article III's injury-in-fact requirement by showing a statutory injury under the Wiretap Act, Plaintiffs have failed to put

United States District Court
Northern District of California

12

Case No.14-CV-02285-LHK
ORDER DENYING MOTION FOR CLASS CERTIFICATION

forth any argument or evidence that Plaintiffs lost any money or property as required to show standing for a UCL claim. Accordingly, the Court DENIES Plaintiffs' motion for class certification for Plaintiffs' UCL claim, as Plaintiffs themselves have failed to show standing to pursue their UCL claim.

### 3. Standing to Seek Injunctive Relief

Plaintiffs request certification of a damages class under Rule 23(b)(3) and an injunctive relief class under Rule 23(b)(2). As discussed above, Plaintiffs have standing to bring class claims for damages under the Wiretap Act. However, for the reasons stated below, the Court finds that Plaintiffs lacks standing to bring claims for injunctive relief.

An injunctive class can be certified under Rule 23(b)(2) where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Unlike Rule 23(b)(3), a plaintiff does not need to show predominance of common issues or superiority of class adjudication to certify a Rule 23(b)(2) class. Rather, only a showing of cohesiveness of class claims is required. *Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998).

Here, Defendant contends that Plaintiffs lack standing for injunctive relief because Plaintiffs cannot establish a real and immediate threat that they will suffer any future re-injury. Opp. at 22. More specifically, Defendant argues that "Plaintiffs have conceded that they now receive all of their text messages and that their problems with iMessage are resolved." *Id.*

To establish standing for prospective injunctive relief, a plaintiff must demonstrate that "he [or she] has suffered or is threatened with a 'concrete and particularized' legal harm . . . coupled with 'a sufficient likelihood that he [or she] will again be wronged in a similar way.'" *Bates*, 511 F.3d at 985 (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)); *see also Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011) (en banc) ("[T]o establish standing to pursue injunctive relief . . . [plaintiffs] must demonstrate a real and immediate threat of repeated

Case No.14-CV-02285-LHK
ORDER DENYING MOTION FOR CLASS CERTIFICATION

United States District Court
Northern District of California

1    injury in the future.").[5] A plaintiff must establish a "real and immediate threat of repeated injury."

2    *Bates*, 511 F.3d at 985. The alleged threat cannot be "conjectural" or "hypothetical." *Lyons*, 461

3    U.S. at 101–02. "Past exposure to illegal conduct does not in itself show a present case or

4    controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse

5    effects." *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974). Finally, a named plaintiff must show

6    that he or she is subject to a likelihood of future injury. Allegations that a defendant's conduct will

7    subject unnamed class members to the alleged harm is insufficient to establish standing to seek

8    injunctive relief on behalf of the class. *Hodgers–Durgin v. De La Vina*, 199 F.3d 1037, 1045–45

9    (9th Cir. 1999).

10           Here, the Court finds that Plaintiffs have failed to show a real and immediate threat of

11   future re-injury. *See Bates*, 511 F.3d at 985. As Defendant notes, Plaintiff Morris is currently

12   using an iPhone 6 and has no intention of ever using iMessage in the future. *See* Declaration of

13   Tiffany Cheung in support of opposition to class certification ("Cheung Decl."), ECF No. 75, Exh.

14   3 ("Morris Depo."), at 35:24–25 ("Q: Are you currently using the iPhone 6? A: Yes, I am, uh-

15   huh"); 33:3–5 ("Q: Are you currently using iMessage on that phone? A: No. Absolutely not.").

16   There is no evidence in the record that Plaintiff Morris, who is currently using an Apple device, is

17   at any specific or actual risk of failing to receive text messages in the future. Nor is there any

18   indication that Plaintiff Morris will be subject to having his phone number associated with

19   iMessage in the future. To the contrary, Plaintiff Morris testified at his deposition that he "turned

20   off [iMessage] before my phone number could be captured" when Plaintiff activated his iPhone 6.

21   *Id.* at 33:6–12. Plaintiffs do not explain how or why Plaintiff Morris could be subject to

22   intercepted text messages in the future, much less how or why there is a real and immediate threat

23   of such interception. Accordingly, the Court finds that Plaintiff Morris has failed to demonstrate

24   that he is subject to a likelihood of future injury and therefore lacks standing to pursue injunctive

---

[5] This requirement is separate from the minimum threshold requirements for Article III standing to bring a damages claim discussed in the previous section. *Clark v. City of Lakewood*, 259 F.3d 996, 1006 (9th Cir. 2001) ("A determination that a plaintiff has standing to seek damages does not ensure that the plaintiff can also seek injunctive or declaratory relief.").

14

Case No.14-CV-02285-LHK
ORDER DENYING MOTION FOR CLASS CERTIFICATION

1   relief. *See O'Shea*, 414 U.S. at 495–96; *Lyons*, 461 U.S. at 111.

2       Similarly, the Court finds that Plaintiff Adam Backhaut has failed to put forth any evidence

3   of a "real and immediate threat of repeated injury." *Bates*, 511 F.3d at 985. Plaintiff Backhaut

4   testified at his deposition that he is now receiving text messages and that Plaintiff knew "the issue

5   stop[ped]" because he began receiving text messages from his spouse and "that's when [Plaintiff

6   Backhaut] kn[e]w it was resolved." Cheung Decl., Exh. 2 ("Backhaut Depo."), at 72:12; 72:20–25.

7   Besides this testimony that appears to indicate that Plaintiff Backhaut's issue with iMessage has

8   been fully resolved, the Court notes that there appears to be no evidence in the record that Plaintiff

9   Backhaut has experienced any subsequent intercepted text messages or faces any "real and

10  immediate threat of repeated injury." *Bates*, 511 F.3d at 985.

11      Plaintiffs contend that they are "at risk of future harm because even though they have been

12  de-registered from iMessage, messages sent from existing conversations may continue to be

13  intercepted." Reply at 14. Plaintiffs cite internal Apple emails discussing complaints that "3 to 24

14  hours" after de-registering, users were still not receiving their text messages. *See id.* (citing Ezrin

15  Decl. Exhs. Z, AA). The internal emails that Plaintiffs rely on for this argument, however, only

16  state that as of May 2014, de-registration could take up to 48 hours before taking effect. *See* Ezrin

17  Decl., Exh. AA, at APL-Backhaut_00031356–65. That Plaintiffs may have experienced a 48 hour

18  delay at the time that they de-registered from iMessage does not show that Plaintiffs currently face

19  any "real and immediate threat of repeated injury." *Bates*, 511 F.3d at 985. Plaintiffs do not cite

20  any other evidence in the record supporting the general assertion that Plaintiffs are likely to suffer

21  intercepted text messages in the future because of Defendant's iMessage service. In light of

22  Plaintiffs' own admissions, the Court concludes that any "risk of future harm" that messages "may

23  continue to be intercepted" is too speculative to support a likelihood of future injury. *See Lyons*,

24  461 U.S. at 101–02. Plaintiffs bear the burden of showing a likelihood of future injury, not merely

25  a "risk" of future injury. *See id.*; *see also Bates*, 511 F.3d at 985. Here, the Court finds that

26  Plaintiffs have failed to satisfy that burden.

27      In sum, as Plaintiffs have failed to put forth any evidence showing that Plaintiffs are likely

28

Case No.14-CV-02285-LHK
ORDER DENYING MOTION FOR CLASS CERTIFICATION

United States District Court
Northern District of California

1    to suffer future intercepted text messages, the Court concludes that Plaintiffs lack standing to seek

2    injunctive relief. Plaintiffs therefore cannot seek to assert claims for injunctive relief on behalf of

3    absent class members. *See Bates*, 511 F.3d at 985; *Hodgers–Durgin*, 199 F.3d at 1045–45.

4    Accordingly, the Court DENIES Plaintiffs' motion to certify an injunctive relief class pursuant to

5    Rule 23(b)(2).

6    **B.  Rule 23 Requirements**

7          Having found that Plaintiffs only have standing to seek certification of a damages class

8    under Rule 23(b)(3) for Plaintiffs' Wiretap Act claim, the Court now turns to the requirements for

9    class certification under Rule 23(b)(3). Defendant challenges whether (1) the proposed class is

10   ascertainable; (2) individualized issues would predominate over any common issues; and (3)

11   whether Plaintiffs are typical or adequate class representatives. For the reasons discussed below,

12   the Court concludes that Plaintiffs' proposed class is unascertainable and that individualized issues

13   would predominate over common questions. Accordingly, the Court does not reach Defendant's

14   arguments with respect to typicality and adequacy.

15   **1.  Ascertainability**

16         "As a threshold matter, and apart from the explicit requirements of Rule 23(a), the party

17   seeking class certification must demonstrate that an identifiable and ascertainable class exists."

18   *Sethavanish v. ZonePerfect Nutrition Co.*, No. 12-2907, 2014 WL 580696 (N.D. Cal. Feb. 13,

19   2014). A class is ascertainable if the class is defined with "objective criteria" and if it is

20   "administratively feasible to determine whether a particular individual is a member of the class."

21   *See Wolph v. Acer America Corp.*, No. 09-1314, 2012 WL 993531, at *1–2 (N.D. Cal. Mar. 23,

22   2012) (certifying a class where "the identity and contact information for a significant portion of

23   these individuals can be obtained from the warranty registration information and through Acer's

24   customer service databases"); *see also Hofstetter v. Chase Home Finance, LLC*, No. 10-01313,

25   2011 WL 1225900, at *14 (N.D. Cal. Mar. 31, 2011) (certifying class where "defendants' business

26   records should be sufficient to determine the class membership status of any given individual.");

27   *Xavier v. Philip Morris USA Inc.*, 787 F. Supp. 2d 1075, 1089 (N.D. Cal. 2011) (denying the

28
Case No.14-CV-02285-LHK
ORDER DENYING MOTION FOR CLASS CERTIFICATION

United States District Court
Northern District of California

ascertainability of a class that smoked cigarettes for "at least twenty years"); *Tietsworth v. Sears, Roebuck & Co.*, No. 09-288, 2013 WL 1303100, at *3–4 (N.D. Cal. Mar. 28, 2013) (denying certification where "ascertaining class membership would require unmanageable individualized inquiry").

Here, Plaintiffs move to certify the following class:

> All persons residing in the United States who are former iPhone/iMessage Users who switched to a non-iOS device and whose text messages from current iMessage-enabled iPhone users were intercepted by iMessage and not received.

Mot. at 14. Under Plaintiffs' proposed class definition, whether any given individual was included in the class would require a determination of whether he or she had text messages "intercepted by iMessage" that he or she then did not receive. As a threshold matter, the parties do not dispute that proposed class members cannot be ascertained by reference to Defendant's existing records. Opp. at 13–14; Reply at 7–8. Plaintiffs contend that that their proposed class definition "uses inherently objective criteria to identify the putative Class Members," because "an individual either had messages intercepted or they did not." Mot. at 14. In opposition, Defendant contends that determining whether an individual actually suffered an "interception by iMessage" is both "unreliable and infeasible."

Plaintiffs assert that Defendant destroyed iMessage server logs which would have assisted in ascertaining class membership. Mot. at 11. For this proposition, Plaintiffs rely on paragraph 43 of the declaration of their expert Dr. Sigurd Meldal in support of class certification. *See* ECF No. 53, ¶ 43. In paragraph 43, Dr. Meldal asserted that the "iMessage System maintains a set of logs of events in the system, including logs of the transmission of messages between users and what action was taken and when." *Id.* However, after Dr. Meldal submitted his declaration and after the completion of the instant class certification briefing, Magistrate Judge Paul Grewal struck paragraph 43 from Dr. Meldal's declaration for apparently an alleged protective order violation. ECF No. 73; ECF No. 74 (Errata and corrected declaration). Accordingly, Plaintiffs may no longer rely on paragraph 43 and Dr. Meldal's conclusion that Defendant's iMessage server logs would

1   have assisted in establishing class membership.

2        Moreover, the Court has independently reviewed paragraph 43 of Dr. Meldal's declaration

3   and the record in this case. The Court is not persuaded that the iMessage server logs would have

4   assisted the Court in determining whether a proposed class member failed to receive text messages

5   from current iOS users due to iMessage. As Defendant notes, Dr. Meldal's stricken conclusion

6   relied on a mischaracterization of an Apple witness's deposition testimony. At most the iMessage

7   server logs may have identified when a user de-registered from iMessage, but there is no evidence

8   that the logs indicated whether a third party iOS user attempted to send a text message via

9   iMessage, whether iMessage "intercepted" that text message, or whether a proposed class member

10   received or failed to receive that text message. As Dr. Meldal conceded in his own deposition, his

11   conclusions with respect to what the iMessage sever logs contained were not "based on what [he]

12   actually kn[e]w about Apple's architecture." *See* Cheung Decl., Exh. 9, at 290:6–9. Accordingly,

13   the Court is not persuaded that the iMessage server logs would have made class membership

14   ascertainable.

15        Moreover, as Plaintiffs note, where a defendant does not have records that would identify

16   class members, courts have looked to self-identification as an alternative. *See* Reply at 7–8. For

17   the reasons discussed below, however, the Court finds that self-identification in the instant case

18   would be both unreliable and administratively infeasible.

19        The parties appear to assume that class membership in the instant case would be

20   determined via self-reporting. At a minimum, self-reporting would require an individual former

21   iPhone/iMessage user to determine whether or not he or she failed to receive a text message and

22   whether the undelivered text message was "intercepted by iMessage." This Court, among others in

23   this District, has previously concluded that self-identification may be an acceptable way to

24   ascertain class membership. *See, e.g.*, *Bruton v. Geber Prods. Co.*, No. 12-CV-02412-LHK, 2014

25   WL 2860995, at *6 (N.D. Cal. June 23, 2014); *Ries v. Az. Beverages USA LLC*, 287 F.R.D. 523,

26   535 (N.D. Cal. 2012). That does not, however, vitiate the requirement that a proposed class be

27   defined with "objective criteria" and that it be "administratively feasible to determine whether a

28

Case No.14-CV-02285-LHK
ORDER DENYING MOTION FOR CLASS CERTIFICATION

United States District Court
Northern District of California

1   particular individual is a member of the class." *Wolph*, 2012 WL 993531, at *1–2.

2          Here, the Court concludes that Plaintiffs' proposed class definition is unascertainable

3   because it would require individualized factual determinations merely to determine whether an

4   individual falls within the proposed class. *See, e.g.*, *Hanni v. Am. Airlines, Inc.*, No. 08-00732-

5   CW, 2010 WL 289297, at *9–10 (N.D. Cal. Jan. 15, 2010). These individualized factual

6   proceedings would be administratively infeasible. More specifically, whether or not Defendant

7   "intercepted" a proposed class member's undelivered text message will require the Court to

8   determine, as a factual matter, that: (1) a third party attempted to send the proposed class member

9   a text message from an iMessage-enabled device; (2) the proposed class member did not receive

10  that text message; and (3) the failed text message was "intercepted" by iMessage. Where, as here,

11  "a court must make a determination of the merits of the individual claims to determine whether a

12  person is a member of the class," the class definition is inadequate. *Id.* (quoting 5 Moore, Moore's

13  Federal Practice § 23.21[3][c] (2001)).

14         Importantly, Plaintiffs do not dispute that the Court would be required to undertake

15  individual fact-finding proceedings to determine class membership for each proposed class

16  member. *See generally* Reply 7–11. Such determinations would involve highly individualized

17  inquiries. *See Hanni*, 2010 WL 289297, at *9. The need for individualized factual proceedings to

18  determine class membership renders the class unascertainable. *See id.*; *see also Daniel F. v. Blue*

19  *Shield of Cal.*, 305 F.R.D. 115, 125 (N.D. Cal. 2014) (finding class unascertainable where

20  determining class membership would require "a series of individualized inquiries"); *Tietsworth*,

21  2013 WL 1303100, at *3–4 (finding that certification is inappropriate where ascertaining class

22  membership requires unmanageable individualized inquiries).

23         Plaintiffs contend that the "exact contours of class membership" can "form after trial," and

24  rely on *In re Methyl Tertiary Butyl Ether (MTBE) Products Liability Litigation*, 241 F.R.D. 185

25  (S.D.N.Y. 2007). Plaintiffs are correct that as a general matter, the ascertainability requirement

26  does not require that the identity of all proposed class members be known at the time of

27  certification. *See id.* That does not, however, address the fact that ascertaining class membership

28

United States District Court
Northern District of California

19

Case No.14-CV-02285-LHK
ORDER DENYING MOTION FOR CLASS CERTIFICATION

1    under Plaintiffs' proposed class definition would require fact-intensive individualized proceedings

2    that would essentially be individualized determinations of liability. As the Court discusses in

3    further depth in its predominance analysis below, these individualized inquiries make class

4    treatment inappropriate in the instant case.

5          Moreover, the Court agrees with Defendant that it is not clear that a proposed class

6    member would even have access to sufficient information to be able to self-identify. Under

7    Plaintiffs' proposed class definition, a proposed class member would have to know that the third

8    party was using iMessage and not a third-party application or SMS messages, that the third party

9    attempted to send the proposed class member a text message that the class member did not

10   receive, and that the undelivered text message was "intercepted" by iMessage. In light of

11   Plaintiffs' own uncertainty with respect to when Plaintiffs did not receive text messages, the

12   identity of the senders of those messages, and the number of undelivered text messages, the Court

13   is not persuaded that proposed class members will be capable of reliable self-identification. *See,*

14   *e.g.*, Cheung Decl., Exh. 3, at 137:3–11; 138:15–139:19 (Plaintiff Morris); Exh. 2, at 84:1–10

15   (Plaintiff Backhaut).

16         This uncertainty is distinct from the concerns raised in consumer protection class actions

17   where consumers might not have been able to produce proof of purchase. *See* Reply at 9–10

18   (citing *Tchoboian v. Parking Concepts*, No. SACV 09-422, 2009 WL 2169883 (C.D. Cal. July 16,

19   2009), and *In re ConAgra Foods, Inc.*, No. 11-05379, 2015 WL 1062756, (C.D. Cal. Feb. 23,

20   2015)). Whether an individual purchased or did not purchase a particular product is a piece of

21   information that an individual may not fully recall, but certainly is capable of knowing. Here,

22   whether a third party sender used iMessage, whether it was before or after a proposed class

23   member attempted de-registration, and whether the proposed class member did or did not receive

24   the text message involve multiple layers of uncertainty. Given these multiple contingent layers of

25   uncertainty, the Court concludes that Plaintiffs have failed to show that proposed class members

26   will be capable of reliable self-identification, or that it would be administratively feasible for the

27   Court to determine class membership.

28

20

Case No.14-CV-02285-LHK
ORDER DENYING MOTION FOR CLASS CERTIFICATION

United States District Court
Northern District of California

1      In sum, the Court finds that Plaintiffs' proposed class definition is unascertainable.

2  "[W]hile a lack of ascertainability alone will not necessarily defeat class certification," the Court

3  concludes that the issues at the heart of Plaintiffs' ascertainability problem are related to the

4  predominance problems that the Court discusses below. *Daniel F.*, 305 F.R.D. at 125 (citing

5  *Jones*, 2014 WL 2702726, at *11). In light of both the ascertainability issues discussed above, and

6  the predominance problems the Court discusses below, the Court concludes that class certification

7  would be inappropriate.

8      **2.  Predominance**

9      In addition to its arguments with respect to ascertainability, Defendant further contends

10 that Plaintiffs have failed to carry their burden of showing that common issues of law or fact

11 predominate over individual issues. *See* Fed. R. Civ. P. 23(b)(3). For the reasons discussed below,

12 the Court concludes that the individualized inquiries necessary to determine whether either the

13 sender or proposed class member impliedly consented to Defendant's alleged interceptions

14 predominate over any common questions of law or fact. The Court begins by laying out the legal

15 standard for predominance before addressing the predominance problems posed by Defendant's

16 implied consent defense.

17     **a.  Predominance Legal Standard**

18     The predominance inquiry of Rule 23(b)(3) "tests whether proposed classes are sufficiently

19 cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S.

20 591, 623 (1997). Accordingly, the predominance analysis "focuses on the relationship between the

21 common and individual issues in the case." *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 545

22 (9th Cir. 2013) (internal quotation marks omitted); *see also In re Wells Fargo Home Mortgage

23 Overtime Pay Litig.*, 571 F.3d 953, 958 (9th Cir. 2009) ("Whether judicial economy will be served

24 in a particular case turns on close scrutiny of the relationship between the common and individual

25 issues." (internal quotation marks omitted)).

26     Undertaking the predominance analysis requires some inquiry into the merits, as the Court

27 must consider "how a trial on the merits would be conducted if a class were certified." *Gene And*

28
Case No.14-CV-02285-LHK
ORDER DENYING MOTION FOR CLASS CERTIFICATION

United States District Court
Northern District of California

1    *Gene LLC v. BioPay LLC*, 541 F.3d 318, 326 (5th Cir. 2008); *see also Zinser*, 253 F.3d at 1190

2    (noting that district courts must consider as part of the predominance analysis whether a

3    manageable class adjudication can be conducted). Though the Court needs to consider the merits

4    to determine whether the action can be litigated on a class-wide basis, the United States Supreme

5    Court has cautioned that class certification is not an opportunity for the Court to undertake plenary

6    merits inquiries. As the United States Supreme Court has stated, "[m]erits questions may be

7    considered to the extent—but only to the extent—that they are relevant to determining whether the

8    Rule 23 prerequisites for class certification are satisfied." *Amgen Inc.*, 133 S. Ct. at 1195; *see also*

9    *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 851 (6th Cir.

10   2013) (noting that merits inquiries at the class certification stage are limited to those necessary to

11   resolving the question presented by Rule 23).

12       The Court's predominance analysis "entails identifying the substantive issues that will

13   control the outcome, assessing which issues will predominate, and then determining whether the

14   issues are common to the class, a process that ultimately prevents the class from degenerating into

15   a series of individual trials." *Gene And Gene LLC*, 541 F.3d at 326; *see also In re New Motor*

16   *Vehicles Canadian Exp. Antitrust Litig.*, 522 F.3d 6, 20 (1st Cir. 2008) ("Under the predominance

17   inquiry, a district court must formulate some prediction as to how specific issues will play out in

18   order to determine whether common or individual issues predominate in a given case." (internal

19   quotation marks omitted)); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998)

20   (finding predominance "[w]hen common questions present a significant aspect of the case and

21   they can be resolved for all members of the class in a single adjudication"). To meet the

22   predominance requirement, "common questions must be a significant aspect of the case that can

23   be resolved for all members of the class in a single adjudication." *Berger v. Home Depot USA,*

24   *Inc.*, 741 F.3d 1061, 1068 (9th Cir. 2014) (internal quotation marks and alterations omitted).

25       Importantly, the predominance inquiry is a pragmatic one, in which the Court does more

26   than just count up common issues and individual issues. Wright & Miller, *Federal Practice &*

27   *Procedure* § 1778 (3d ed. 2005) (noting that "the proper standard under Rule 23(b)(3) is a

28

Case No.14-CV-02285-LHK
ORDER DENYING MOTION FOR CLASS CERTIFICATION

United States District Court
Northern District of California

pragmatic one, which is in keeping with the basic objectives of the Rule 23(b)(3) class action").

As the Seventh Circuit recently stated, "predominance requires a qualitative assessment too; it is

not bean counting." *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir. 2013). The

Court's inquiry is not whether common questions predominate with respect to individual elements

or affirmative defenses; rather, the inquiry is a holistic one, in which the Court considers whether

overall, considering the issues to be litigated, common issues will predominate. *Amgen*, 133 S. Ct.

at 1196.

### b.  Predominance and Implied Consent

The Wiretap Act, as amended by the ECPA, prohibits the interception of "wire, oral, or

electronic communications." 18 U.S.C. § 2511(1); *Joffe v. Google, Inc.*, 746 F.3d 920, 924–25

(9th Cir. 2013). More specifically, the Wiretap Act provides a private right of action against any

person who "intentionally intercepts, endeavors to intercept, or procures any other person to

intercept or endeavor to intercept, any wire, oral, or electronic communication." 18 U.S.C.

§ 2511(1)(a); *see id.* § 2520 (providing a private right of action for violations of § 2511). The

Wiretap Act contains several exemptions that render interceptions lawful. *See* 18 U.S.C.

§ 2511(2)(a)-(h). Among these exemptions is an exemption for consent:

> It shall not be unlawful under this chapter for a person not acting
> under color of law to intercept a wire, oral, or electronic
> communication where such person is a party to the communication
> or where one of the parties to the communication has given prior
> consent to such interception unless such communication is
> intercepted for the purpose of committing any criminal or tortious
> act in violation of the Constitution or laws of the United States or of
> any State.

18 U.S.C. § 2511(2)(d).

Moreover, consent by one party to the communication is sufficient to render the

interception lawful. 18 U.S.C. § 2511(2)(d). Consent may be express or implied. *See In re Google

Inc. Gmail Litig.*, No. 13-MD-02430-LHK, 2014 WL 1102660, at *14 (N.D. Cal. Mar. 18, 2014)

(citing *United States v. Van Poyck*, 77 F.3d 285, 292 (9th Cir. 1996); *In re Pharmatrak, Inc.*, 329

F.3d 9, 19 (1st Cir. 2003) ("Consent may be explicit or implied, but it must be actual consent

Case No.14-CV-02285-LHK
ORDER DENYING MOTION FOR CLASS CERTIFICATION

1    rather than constructive consent.")).

2         As the Court noted in *In re Gmail*, "[i]mplied consent is an intensely factual question that

3    requires consideration of the circumstances surrounding the interception to divine whether the

4    party whose communication was intercepted was on notice that the communication would be

5    intercepted." *In re Google Inc. Gmail Litig.*, 2014 WL 1102660, at *16; *see also Watkins v. L.M.*

6    *Berry & Co.*, 704 F.2d 577, 582 (11th Cir. 1983) ("It is the task of the trier of fact to determine the

7    scope of the consent and to decide whether and to what extent the interception exceeded that

8    consent."). Here, both parties have put forth substantial evidence that there were numerous sources

9    of information, including disclosures by Defendant, which could have put some proposed class

10   members and senders of "intercepted" communications on notice of the alleged interceptions.

11   "[C]ourts have consistently held that implied consent is a question of fact that requires looking at

12   all of the circumstances surrounding the interceptions to determine whether an individual knew

13   that her communications were being intercepted." *In re Google Inc. Gmail Litig.*, 2014 WL

14   1102660, at *16. The Court would therefore have to determine, for each individual class member,

15   the circumstances under which the proposed class member or sender was or was not exposed to

16   these various sources of information regarding iMessage and Defendant's alleged interceptions.

17        In the instant case, the Court concludes that individualized issues with respect to consent

18   would predominate over any common questions of law or fact. As Defendant notes, proposed

19   class members and the iOS users attempting to send text messages to proposed class members

20   could have been put on notice of the alleged interceptions from Defendant's own disclosures,

21   numerous online postings and websites, or third-party news articles. Opp. at 16–17. Defendant

22   contends that those proposed class members who switched to a non-Apple device with actual

23   notice that failure to de-register would result in "intercepted" text messages impliedly consented to

24   any alleged interception. *See id.* In addition, because one-party consent is sufficient under the

25   Wiretap Act, Defendant also notes that the sender of any "intercepted" text message may have also

26   been on actual notice and therefore impliedly consented to any alleged interception.

27        In support of its argument, Defendant cites its disclosures on its website regarding

28

Case No.14-CV-02285-LHK
ORDER DENYING MOTION FOR CLASS CERTIFICATION

United States District Court
Northern District of California

1    iMessage and the explanation that "if you don't [turn off iMessage before switching to a non-

2    Apple device], other iOS devices might continue to try to send you messages using iMessage,

3    instead of using SMS or MMS, for up to 45 days." *See* Cheung Decl. Exh. 12; *see also* Exh. 5,

4    76:8–77:4; 42:1–12. Defendant also identifies online postings and websites, including Apple

5    Support Community boards and third-party websites discussing the iMessage bug and how to de-

6    register from iMessage. *See id.*; Opp. at 16–17. Furthermore, Plaintiffs have also put forth

7    evidence of widespread publicity regarding the iMessage issue. Plaintiffs cite an October 29, 2011

8    post on an AppleCare discussion board entitled "iPhone trying to send iMessage on non-iPhone,"

9    which Plaintiffs note has over 70 comments. *See* Mot. at 4 (citing Ezrin Decl., Exh. H). Plaintiffs

10   also reference several other posts from the AppleCare website, including one post from December

11   16, 2011 that apparently has 136 replies and comments. *Id.* (citing Ezrin Decl., Exh. I). In

12   addition, third party news articles publicized the iMessage issue and numerous reader comments

13   on these articles discuss the need to deregister or turn off iMessage in order to avoid undelivered

14   text messages. Plaintiffs also state that "reports of the iMessage bug appeared shortly after the

15   application's release in various technical journals," and specifically cite a January 5, 2012 article

16   in CNET Magazine. *Id.* (Ezrin Decl., Exh. N). Indeed, as Defendant notes, Plaintiff Backhaut

17   testified at his deposition that "there's a who[l]e host of information online regarding" the

18   iMessage issue and de-registering from iMessage. Backhaut Depo. at 39:13–18. These "broad

19   disclosures" may be sufficient to have put proposed class members or senders on notice of the

20   alleged interceptions. *See In re Google Inc. Gmail Litig.*, 2014 WL 1102660, at *20 (finding that

21   defendant could "rely on news articles to argue to the finder of fact that users impliedly

22   consented" and citing *Berry*, 146 F.3d at 1011).

23          As one-party consent is a defense under the Wiretap Act, the Court would have to

24   individually determine whether either a proposed class member or the iOS user that sent the

25   proposed class member an allegedly intercepted text message "knew about and consented to the

26   interception" based on the sources to which he or she was exposed. *Berry*, 146 F.3d at 1011; *see*

27   *also In re Google Inc. Gmail Litig.*, 2014 WL 1102660, at *17. This highly fact-intensive inquiry

28

United States District Court
Northern District of California

25

1    will require "individual inquiries into the knowledge of individual" proposed class members as

2    well as the senders of the allegedly intercepted communications. *In re Google Inc. Gmail Litig*.,

3    2014 WL 1102660, at *17. As the Court concluded in *In re Gmail*, "determining to what

4    disclosures each Class member [or sender] was privy and determining whether that specific

5    combination of disclosures was sufficient to imply consent—will lead to numerous individualized

6    inquiries that will overwhelm any common questions." *Id.* In light of the variety of the sources of

7    information related to the iMessage bug and Defendant's alleged interceptions, the Court notes

8    that each inquiry will require a careful parsing of whether an individual proposed class member or

9    the relevant sender was actually on notice of any alleged interceptions.

10          The Court notes that Plaintiffs offer no response in their reply to Defendant's arguments

11   with respect to consent and the individualized inquiries that Defendant's implied consent defense

12   will require. *See generally* Reply. Plaintiffs do note in their motion, however, that the Court

13   denied Defendant's consent-based argument as a basis to dismiss Plaintiffs' complaint in the

14   Court's November 19, 2014 order. *See* ECF No. 27. More specifically, the Court addressed

15   Defendant's argument that iMessage users expressly consented to any alleged interception based

16   on a disclosure in the iOS license agreement that "[t]o facilitate delivery of your iMessages and to

17   enable you to maintain conversations across your devices, Apple may hold your iMessages in

18   encrypted form for a limited period of time." ECF No. 27, at 13–14. The Court concluded that this

19   disclosure standing alone was insufficient to constitute express consent as a matter of law, as "a

20   reasonable iMessage user would not be adequately notified that Apple would intercept his or her

21   messages when doing so would not 'facilitate delivery' of the messages." *Id.* at 14.

22          Here, however, the predominance problems posed by Defendant's implied consent defense

23   are distinct from the express consent defense Defendant raised at the motion to dismiss stage. As

24   discussed above, there is a panoply of sources from which a proposed individual class member or

25   the sender of the allegedly intercepted text message could have been put on notice that iMessage

26   would "intercept" their communications. Plaintiff does not dispute that this would require that the

27   Court conduct highly fact-intensive individual inquiries into whether a proposed class member or

28

United States District Court
Northern District of California

26

Case No.14-CV-02285-LHK
ORDER DENYING MOTION FOR CLASS CERTIFICATION

the sender knew about and consented to any alleged interception. Plaintiffs' sole argument with respect to implied consent is that "[b]ased on the nature of the interception and the volume and vitriolic manner of the online complaints, a reasonable person could not conclude that any Class Member would ever have consented to have their messages intercepted so as not to be delivered." Mot. at 20. That bare assertion, however, is unsupported by any further argument or evidence. The Court cannot conclude, as a matter of law, that a proposed class member's apparent frustration at experiencing undelivered text messages precludes the possibility that a proposed class member or the sender was on notice of Defendant's alleged interceptions. The Court does not conclude that Defendant will necessarily prevail on its implied consent defense as to every proposed class member, but the Court does find that the need to determine, on an individual-by-individual basis, whether a proposed class member impliedly consented to any alleged interception would predominate over any common questions of law or fact.

In sum, the Court finds that the highly individualized and fact-specific inquiry required to determine whether a proposed class member impliedly consented to Defendant's alleged interception would predominate over any common questions of law or fact. Taking into consideration both the ascertainability and the predominance problems posed by Plaintiffs' proposed class, the Court concludes that class treatment would not serve judicial economy. *See In re Wells Fargo Home Mortgage Overtime Pay Litig.*, 571 F.3d at 958 ("Whether judicial economy will be served in a particular case turns on close scrutiny of the relationship between the common and individual issues." (internal quotation marks omitted)).

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiffs' motion for class certification. As discussed above, the Court finds that Plaintiffs lack standing under the UCL and lack standing to seek certification of an injunctive relief class under Rule 23(b)(2). Furthermore, the Court finds that Plaintiffs' proposed damages class under Rule 23(b)(3) is unascertainable and that individualized issues with respect to consent predominate over any common issues.

27

Case No.14-CV-02285-LHK
ORDER DENYING MOTION FOR CLASS CERTIFICATION

1    **IT IS SO ORDERED.**

2    Dated: August 13, 2015

3    _Lucy H. Koh_____

4    LUCY H. KOH
     United States District Judge